1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CBC FRAMING, INC., a California
corporation,

          Plaintiff,

vs.

MICHAEL A. FLORES, aka MIKE
FLORES, RUBEN FLORES, RAUL
MORALES, aka RAUL MORALES
OLVERA, EFREN MORALES, aka EFREN
MORALES OLVERA, FRANCISCO
BADILLO, aka FRANCISCO BADILLO
VASQUEZ, and QUINTIN BADILLO, aka
QUINTIN BADILLO VASQUEZ,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 08-00150 MMM (JCx)

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS

On January 10, 2008, CBC Framing, Inc. filed this action against Michael A. Flores, Ruben Flores, Raul Morales, Efren Morales, Francisco Badillo, and Quintin Badillo. CBC, a licensed framing contractor located in Canoga Park, alleges that defendants, acting as foremen and superintendents, engaged in schemes to defraud it in order to embezzle the payroll for defendants' use. CBC asserts claims for, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), fraud, and conversion.

On March 20, 2008, defendants filed a motion to dismiss for failure to establish venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure, failure to state a RICO claim under Rule 12(b)(6),

failure to establish subject matter jurisdiction under Rule 12(b)(1), and failure to state a fraud claim under Rule 9(b).

## I. FACTUAL BACKGROUND

### A.  Substantive and Jurisdictional Allegations in the Complaint

#### 1.  The Parties

CBC is a California corporation with its principal place of business in Canoga Park, which is located in Los Angeles County.[1]  Michael Flores resides in Escalon, located in San Joaquin County,[2] while Ruben Flores resides in Marysville, located in Yuba County.[3]  Raul Morales lives in Bay Point, in Contra Costa County,[4] and Efren Morales resides in Concord, in Contra Costa County.[5]  Both Francisco Badillo and Quintin Badillo live in Stockton, which is located in San Joaquin County.[6]

#### 2.  Plaintiff's Business

As noted, CBC is a licensed framing contractor; all payroll processing and issuance of payroll checks occurs at its Canoga Park office.[7]  As part of its business, CBC employs crews of carpenters and other workers ("framers") to construct residential housing, apartment, condominium, and town home projects throughout California.[8]  Plaintiff's crews vary in size depending on the size of the project, the time for completion, the number of phases, and other factors.[9]  The size of the crews also varies over

---

[1]Complaint, ¶ 4.

[2]*Id.*, ¶ 5.

[3]*Id.*, ¶ 6.

[4]*Id.*, ¶ 7.

[5]*Id.*, ¶ 8.

[6]*Id.*, ¶¶ 9, 10.

[7]*Id.*, ¶ 13.

[8]*Id.*, ¶ 14.

[9]*Id.*

the life of a particular project due to personnel changes, reassignment of framers to another project, or the need to lay off framers when there is insufficient work to keep them occupied.[10] At any given time during the relevant period, CBC had 800 to 2,500 framers working on multiple projects at various locations throughout the state; in toto, approximately 8,000 to 10,000 different framers were employed.[11]

CBC crews are typically supervised in the field by a job foreman, who is responsible for overseeing the crew's day-to-day work at a particular project.[12]  In general, it is the responsibility of each project foreman to hire and fire members of his crew, subject to the approval of CBC's general superintendent.[13] CBC hires general superintendents who oversee six to eight projects at any given time and provide direct supervision for the job foremen.[14]  It is the responsibility of the general superintendent to hire and fire the job foreman.[15] The general superintendents report to CBC's president and/or vice-president at the corporate office in Canoga Park.[16]

CBC pays its foremen and framers on a weekly basis for work performed and reported by the project foremen to CBC for the prior week.[17]  The project foremen are charged with keeping track of the individual framers on their projects, and accounting for the work performed by each.[18] At the end of each work week, each project foreman prepares a written payroll report that includes the names of the framers and the foreman who worked on the project that week and all required payroll information;

---

[10]*Id.*

[11]*Id.*, ¶ 18.

[12]*Id.*, ¶ 15.

[13]*Id.*

[14]*Id.*, ¶ 16.

[15]*Id.*

[16]*Id.*, ¶ 17.

[17]*Id.*, ¶ 19.

[18]*Id.*

the foreman transmits the payroll sheet via facsimile to CBC's office in Canoga Park.[19]

CBC's payroll department issues payroll checks to the framers and foremen based on the payroll sheets.[20]  The accuracy of the payroll depends on accurate reporting of work performed by the framers on each project by the project's foreman.[21]  Ordinarily, the checks are sent via overnight courier service to CBC's facility in Stockton; at that point, the general superintendents have the checks delivered to the job sites, or project foremen pick them up and take them to the job site.[22]  In either case, the foremen pass the checks out to each payee at the job site.[23]

### 3.    Allegations Concerning Defendants' Actions

During the relevant time period, Michael Flores was a general superintendent, while the remaining defendants were project foremen or assistant foremen.[24]  CBC asserts that over the last four years, defendants engaged in various schemes to defraud it by falsely reporting payroll in order to embezzle and convert CBC's funds for their own use.[25] CBC alleges:

•    That defendants intentionally prepared and faxed payroll reports to its corporate office stating the names of framers who were not working on CBC projects for the time periods indicated in the payroll submission.[26]  When CBC issued payroll checks for framers listed on the payroll submission, defendants purportedly retained checks issued in the names of framers who had not worked for CBC during the relevant time period, cashed

---

[19]*Id.*

[20]*Id.*, ¶ 20.

[21]*Id.*, ¶ 22.

[22]*Id.*

[23]*Id.*, ¶ 21.

[24]*Id.*, ¶ 23.

[25]*Id.*

[26]*Id.*, ¶ 23(a).

them, and retained the funds for their own use and benefit.[27]

• Defendants intentionally submitted payroll reports falsely overstating a framer's pay for the relevant period.[28] Upon receipt of the payroll checks issued by CBC, defendants had checks in overstated amounts cashed by or on behalf of the individual framer to whom the check had been issued and required the framer to kick back the overstated portion of the wages to defendants.[29] Defendants used intimidation and threats that they would deny the framer further employment to obtain the kickbacks.[30]

• Defendants oversaw projects unrelated to plaintiff's business, such as remodeling one or more of defendants' residences or construction work for third parties.[31] Defendants hired framers employed at one time or another by CBC to do this work, and submitted payroll requests for work on the unrelated job to CBC's corporate office.[32] Defendants gave the payroll checks CBC issued to the framers who worked on the side jobs, although none of their work had been on CBC's behalf.[33]

• In addition to using their own names, defendants used aliases to submit payroll requests to CBC, to falsely report work performed on projects and to keep the payroll checks issued by CBC for the falsely reported work.[34]

• Defendants pilfered and stole lumber and other framing materials that CBC purchased

---

[27]*Id.*

[28]*Id.*, ¶ 23(b).

[29]*Id.*

[30]*Id.*

[31]*Id.*, ¶ 23(c).

[32]*Id.*

[33]*Id.*

[34]*Id.*, ¶ 23(d).

for its projects, and used the materials on their side projects.[35]

**4.      Plaintiff's Claims**

CBC commenced this action on January 10, 2008.  It contends that venue is proper in this district under 28 U.S.C. § 1391(b)(2) and 18 U.S.C. § 1965(a) because "a substantial part of the events or omissions on which the Plaintiff's claim[s] are based occurred in this district."[36]  CBC pleads claims for violation 18 U.S.C. §§ 1962(c) and (d) of RICO, fraud; conversion; breach of fiduciary duty; imposition of a constructive trust; and an accounting.[37]  It seeks compensatory damages; treble damages on the RICO claims; attorney's fees on the RICO claims; punitive damages; imposition of a constructive trust; an accounting of all payroll transactions reported by defendants; costs; and interest.


# II.  DISCUSSION

**A.      Defendants' Motion to Dismiss for Improper Venue**

**1.      Legal Standard Governing Motions to Dismiss Under Rule 12(b)(3)**

A party wishing to challenge venue may file a motion under Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406.  Venue in federal courts is governed entirely by statute.  See *Leroy v. Great Western United Corp.*, 443 U.S. 173, 181 (1979).  If the court finds that a case has been filed "in the wrong division or district," it must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

As plaintiff, CBC has the burden of showing that venue is proper in this district.  See *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979) ("Plaintiff had the burden of showing that venue was properly laid in the Northern District of California").  On a motion to dismiss for improper venue, "the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings."  *Murphy v. Schneider National, Inc.*, 349 F.3d 1224, 1229

---

[35]*Id.*, ¶ 23(e).

[36]*Id.*, ¶ 3.

[37]*Id.*, ¶¶ 24-76.

1   (9th Cir. 2003) (citation omitted).

2           **2.      Whether Venue Is Proper in the Central District of California**

3           The propriety of venue in a particular district is governed by 28 U.S.C. § 1391, which states

4   in part:

5           "A civil action wherein jurisdiction is not founded solely on diversity of citizenship

6           may, except as otherwise provided by law, be brought only in (1) a judicial district

7           where any defendant resides, if all defendants reside in the same State, (2) a judicial

8           district in which a substantial part of the events or omissions giving rise to the claim

9           occurred, or a substantial part of property that is the subject of the action is situated,

10          or (3) a judicial district in which any defendant may be found, if there is no district

11          in which the action may otherwise be brought."  28 U.S.C. § 1391(b).

12          The RICO statute contains a supplemental venue provision, which states that "[a]ny civil

13   action or proceeding under this chapter against any person may be instituted in the district court of

14   the United States for any district in which such person resides, is found, has an agent, or transacts

15   his affairs."  18 U.S.C. § 1965(a).  Because "'[t]he RICO venue provision is supplemental to the

16   general federal venue provision found in 28 U.S.C. § 1391,' . . . [p]laintiff may properly lay venue

17   in accordance with either 18 U.S.C. § 1965(a) or 28 U.S.C. 1391."  *Pardy v. Gray*, CV 06-6801

18   JBW, 2007 WL 1825200, *3 (E.D.N.Y. June 22, 2007) (quoting *Shuman v. Computer Associates

19   Int'l, Inc.*, 762 F.Supp. 114, 116 (E.D. Pa. 1991)); see also *Modaressi v. Vedadi*, 441 F.Supp.2d 51,

20   54-55 (D.D.C. 2006) ("Section 1965 . . . is not a venue requirement; rather, it is a substitute venue

21   provision that a plaintiff may utilize if venue is not otherwise available," citing *City of New York v.

22   Cyco.Net, Inc.*, 383 F.Supp.2d 526, 543-44 (S.D.N.Y. 2005) ("The RICO venue provision is

23   supplemental to the general federal venue provision found in 28 U.S.C. § 1391.  This means Plaintiff

24   may properly lay venue in accordance with either 18 U.S.C. § 1965 or 28 U.S.C. § 1391"); *Monarch

25   Normandy Square Partners v. Normandy Square Assocs. Ltd. P'ship*, 817 F.Supp. 899, 904 (D. Kan.

26   1993) ("The venue provisions of RICO supplement the provisions of § 1391(b)"); *Van Schaick v.

27   Church of Scientology of Calif., Inc.*, 535 F.Supp. 1125, 1133 n. 6 (D. Mass. 1982) ("The special

28

1   venue provision found in 18 U.S.C. § 1965 . . . is intended to liberalize the existing venue
2   provisions")).

3       CBC cannot satisfy the first prong of § 1391(b), as none of the defendants resides in the Central
4   District; all live and work in the Northern and Eastern Districts.[38]  It likewise cannot satisfy the statute's
5   third prong, as it does not allege that any defendant can be found in this district. Cf. *Heinemann v.*
6   *Kennedy*, CV 07-91, 2008 WL 649061, *6 (N.D. W.Va. Mar. 10, 2008) ("The plaintiffs also cannot meet
7   the test of 28 U.S.C. § 1391(b). They fail to meet the requirements of that test's first prong because the
8   defendants do not all live in the same state. They also fail to meet the requirements of the test's third
9   prong because, as already noted, no defendant is found in West Virginia").

10      The second prong of § 1391(b) provides that an action may be brought in any "judicial district
11  in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. §
12  1391(b).  Defendants argue that all or a substantial part of the acts alleged in the complaint took place
13  outside the Central District.[39]  They note that the complaint alleges that their racketeering activity
14  occurred in Northern California; that the job sites from which defendants allegedly pilfered supplies
15  were likely located near CBC's Stockton office or where defendants lived; and that all of the "side
16  projects" reportedly financed with fraudulent payroll funds were located outside the Central District.[40]
17  Defendants contend that the only "act" that occurred within this district was the processing of payroll
18  checks; they note that they were not involved in this activity, and that they did not pick up the paychecks
19  until they had been delivered to CBC's Stockton office.[41]  Defendants maintain that since payroll
20  processing could occur in any location, while the fraud alleged in plaintiff's complaint could only occur

21

22      [38]Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss Action
23  Pursuant to Fed. R. Civ. P. 12(b)(1), (3) and (6); 9(b) ("Def.'s Mem.") at 5.

24      [39]*Id.*; see also Defendants' Reply to Plaintiff's Opposition to Motion to Dismiss ("Def.'s Reply")
25  at 1 ("The defense position is that almost nothing occurred in the Central District.  The Central District
    was not the situs of 'significant events or omissions material to the plaintiff's claim,' so it is not properly
26  the venue," quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)).

27      [40]Def.'s Mem. at 6.

28      [41]*Id.*

at the particular job sites, a "'substantial portion' of the activities occurred outside the Central District."[42]  Cf. *Costlow v. Weeks*, 790 F.2d 1486, 1487-88 (9th Cir. 1986) ("The Costlows concede that all of the defendants reside in Alaska.  Although they argue that their claim [for injury as a result of "defendants' publication of the disputed events to Washington employers requesting employment references"] arose in the state of Washington, virtually all of the activity providing the basis of the complaint took place in Alaska.  The district court properly concluded, therefore, that it lacked venue over the case," citing 28 U.S.C. § 1391(b)).

In arguing that "almost nothing" occurred in the Central District, defendants appear to concede that at least certain events underlying the claims occurred here.[43]  In particular, CBC alleges that defendants directed their fraudulent scheme at this district by submitting false payroll reports to its Canoga Park office.[44]  By inducing CBC to issue payroll checks in Canoga Park and to deliver them to Stockton, defendants' alleged acts and communications caused injury to CBC in the Central District of California.[45]  As a result, CBC maintains, a substantial part of the events giving rise to the claims took place in this district.[46]

The court agrees that these allegations support a finding of venue under § 1391(b)(2). See *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075-76 (9th Cir. 2000) ("Under that statute, venue is proper in a judicial district if 'a substantial part of the events or omissions giving rise to the claim occurred' in that district. . . .  With this policy in mind, at least one court has found that in a tort action, the locus of the injury was a relevant factor. . . .  As noted above, at least one of the 'harms' suffered by Plaintiffs is akin to the tort of invasion of privacy and was felt in Nevada.  Accordingly, a substantial part of the events giving rise to the claim occurred in Nevada.  Thus, venue was proper"); *H&R Block Eastern*

---

[42]*Id.*

[43]Def.'s Reply at 1.

[44]Plaintiff's Opposition to Defendants' Motion to Dismiss Pursuant FRCP 12(b)(1), (3) and (6) ("Pl.'s Opp.") at 3.

[45]*Id.*

[46]*Id.*

9

*Enterprises, Inc. v. J&M Securities, LLC*, CV 05-1056 W DW, 2006 WL 1128744, *2 (W.D. Mo. Apr. 24, 2006) ("Plaintiff's principal place of business is in this District, and Defendants allegedly accessed information stored in this District, causing harm or loss. The Court finds that venue here is proper," citing 28 U.S.C. § 1391(b)(2); *Setco Enters. Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994); *Peridyne Tech. Solutions, LLC v. Matheson Fast Freight, Inc.*, 117 F.Supp.2d 1366, 1373 (N.D. Ga. 2000) ("[T]he plaintiff alleges that the [defendants] illegally accessed the plaintiff's computer systems in Georgia. The fact that the defendants used computers and telephones to enter Georgia does not make venue in Georgia improper"); *Kelly v. MD Buyline Inc.*, 2 F.Supp.2d 420, 440 (S.D.N.Y. 1998) ("The alleged misstatement was targeted at plaintiff in New York and allegedly caused him to rely in this district in three respects – by acceding to defendant's oral request to lower his fee, by executing the written agreement amending the 1995 contract, and by subsequently performing services here under the reduced-fee arrangement. . . .  [T]his satisfies section 1391(b)(2)"); *Glen Eagle Square Equity Associates, Inc. v. First National Bank of Pasco*, No. CIV.A. 93-2441, 1993 WL 405387, * 2 (E.D. Pa. Oct. 12, 1993) ("It is in this district that plaintiffs received allegedly fraudulent communications central to this controversy.  It is in this district that plaintiffs executed the highly pertinent escrow agreement with defendant Pasco.  It is in this district that the project for which plaintiffs sought financing was located.  It is in this district that plaintiffs parted with their money and sustained economic injury.  This is a district in which a substantial part of the events giving rise to plaintiffs' RICO claims occurred.  Thus, venue lies in this district," citing 28 U.S.C. § 1391(b)(2)); *Campbell v. FMC Corp.*, Civ 91-7536, 1992 WL 176417, *2 (E.D. Pa. July 17, 1992) ("Because the injuries which give rise to this action occurred in the Eastern District of Virginia, venue there would be proper"); *Delta Education, Inc. v. Langlois*, 719 F.Supp. 42, 49 (D.N.H. 1989) ("With all of the plaintiff's claims, the plaintiff's business allegedly was injured in New Hampshire.  'If the injury occurred in New Hampshire, then the tort claims arose in New Hampshire, and venue is appropriate under section 1391(b),'" quoting *Velcro Group Corp. v. Billarant*, 692 F.Supp. 1443, 1450 (D.N.H. 1988)).

Defendants argue that it does not serve the interests of justice to proceed in the Central District.[47]

_____

[47]Def.'s Mem. at 6.

10

1   See 18 U.S.C. § 1965(b) ("In any action under section 1964 of this chapter in any district court of the

2   United States in which it is shown that the ends of justice require that other parties residing in any other

3   district be brought before the court, the court may cause such parties to be summoned, and process for

4   that purpose may be served in any judicial district of the United States by the marshal thereof").  They

5   assert that in addition to their residence outside the district, a majority of the witnesses they will call are

6   located outside the district as well.[48]  In making a determination regarding venue, however, the court

7   does "not ask which district among two or more potential forums is the 'best' venue, rather, [it asks]

8   whether the district the plaintiff chose had a substantial connection to the claim, whether or not other

9   forums had greater contacts."  *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003)

10  (citing *Setco Enters.*, 19 F.3d at 1281).  Because CBC has shown that a substantial part of the events

11  giving rise to the claim occurred in Central District – by virtue of the fact that it is the district where it

12  was injured by defendants' alleged activities – the court concludes that venue is proper despite the fact

13  that defendants may have greater contacts with the Northern and/or Eastern Districts of California.  See

14  *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998) ("'The fact that substantial

15  activities took place in district B does not disqualify district A as proper venue as long as 'substantial'

16  activities took place in A, too.  Indeed, district A should not be disqualified even if it is shown that the

17  activities in district B were more substantial, or even the most substantial.  Any other approach would

18  restore the pinpointing problem that created the difficulties under the now discarded 'claim arose'

19  standard.  If the selected district's contacts are 'substantial,' it should make no difference that another's

20  are more so, or the most so,'" quoting David D. Siegel, Commentary on the 1988 and 1990 Revisions

21  of Section 1391, Subdivision (a), Clause (2), 28 U.S.C.A. § 1391 (1993)).[49]

22  _____

23  [48]*Id.*

24  [49]Because the court finds that venue is proper in this district under § 1391(b)(2), it need not
    consider whether venue is appropriate under the RICO venue statute, 18 U.S.C. § 1965.  In addition, the
25  court declines to transfer venue under 28 U.S.C. § 1404(a).  In their reply, defendants note in passing
    that "this Court would be well within its powers to transfer the case to the Eastern District [of
26  California]."  (Def.'s Reply at 3).  Defendants, however, offer little or no argument regarding the factors
    the court must address when evaluating whether to transfer venue.  See 15  Charles A. Wright, Arthur
27  R. Miller, & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 3841-55
28  (1986) (in deciding a motion to transfer venue, the court must weigh multiple factors, including (1) the

1   **B.   Defendants' Motion to Dismiss for Failure to State a Claim**

2    **1.   Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6)**

3     A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.  A

4 Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the

5 absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*,

6 901 F.2d 696, 699 (9th Cir. 1988).  In deciding a Rule 12(b)(6) motion, the court generally looks only

7 to the face of the complaint and documents attached thereto.  *Van Buskirk v. Cable News Network, Inc*.,

8 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d

9 1542, 1555 n. 19 (9th Cir. 1990).

10     The court must accept all factual allegations pleaded in the complaint as true, and construe them

11 and draw all reasonable inferences from them in favor of the nonmoving party.  *Cahill v. Liberty Mutual*

12 *Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).  It need

13 not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of

14

15 plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses;
(4)the location of books and records; (5) which forum's law applies; (6) the interests of justice; and (7)

16 administrative considerations); see also *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th

17 Cir. 2000) (suggesting that the following factors may be relevant in assessing a motion to transfer
venue: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that

18 is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties'

19 contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum,
(6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process

20 to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof").

21     Defendants make no effort to meet their burden of establishing that a transfer would allow
the case to proceed more conveniently and better serve the interests of justice. See, e.g., *Commodity*

22 *Futures Trading Comm. v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).  Although they assert that a

23 majority of the witnesses they intend to call are located in the Eastern District (Def.'s Reply at 3),
in order to show that a transfer is appropriate for the convenience of witnesses, defendants "must name

24 the witnesses [they] wish[ ] to call, the anticipated area of their testimony and its relevance, and the
reasons why the present forum would present hardship to them."  *Bohara v. Backus Hosp. Medical*

25 *Benefit Plan*, 390 F.Supp.2d 957, 963 (C.D. Cal. 2005); see also *Fireman's Fund Ins. Co. v.*

26 *National Bank for Cooperatives*, No. C 92-2667 BAC, 1993 WL 341274, *4 (N.D. Cal. Aug. 27,
1993) ("The movant is obligated to clearly specify the key witnesses to be called and make at least

27 a generalized statement of what their testimony would have included").  Defendants do not identify
the witnesses to which they refer, and do not detail their anticipated testimony, and the court is unwilling

28 to speculate in this regard.

1  factual allegations.  See *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) ("While a

2  complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

3  plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels

4  and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual

5  allegations must be enough to raise a right to relief above the speculative level, on the assumption that

6  all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)).

7                    **2.     Substantive Elements of a RICO Claim**

8          To state a RICO claim, plaintiff must allege that defendants (a) received income derived from

9  a pattern of racketeering activity, and used the income to acquire or invest in an enterprise in interstate

10  commerce; (b) that they acquired or maintained an interest in, or control of, an enterprise engaged in

11  interstate commerce through a pattern of racketeering activity; (c) that they caused an enterprise engaged

12  in interstate commerce, while employed by the enterprise, to conduct or participate in a pattern of

13  racketeering activity; or (d) that they conspired to engage in any of these activities.  18 U.S.C. § 1962;

14  see also *United States v. Turkette*, 452 U.S. 576, 582 (1981) ("[i]n order to [prevail] under RICO, [a

15  party] must prove both the existence of an 'enterprise' and the connected 'pattern of racketeering

16  activity.'  The enterprise is an entity. . . .  The pattern of racketeering activity is, on the other hand, a

17  series of criminal acts as defined by the statute"); *Forsyth v. Humana, Inc*., 114 F.3d 1467, 1481 (9th

18  Cir. 1997) (plaintiff must allege "(1) the conduct; (2) of an enterprise; (3) through a pattern; (4) of

19  racketeering activity").

20          Racketeering activity is any act indictable under 18 U.S.C. § 1961.  *Forsyth*, 114 F.3d at 1481.

21  Predicate acts of racketeering activity are "any act or threat involving murder, kidnapping, gambling,

22  arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or

23  listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable

24  under State law and punishable by imprisonment for more than one year," and "any act which is

25  indictable" under various provisions of Title 18 of the Unites States Code, including section 1503

26  (obstruction of justice), section 1510 (obstruction of criminal investigations), section 1511

27  (obstruction of State or local law enforcement), section 1512 (tampering with a witness, victim, or

28

an informant), and section 1513 (retaliation against a witness, victim, or informant).  18 U.S.C. § 1961(1).

A "pattern" requires the commission of at least two acts of "racketeering activity" within a ten-year period.  18 U.S.C. § 1961(5).  An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).

Plaintiff must plead that defendants' violation was both the "but for" and proximate cause of a concrete financial injury.  *Resolution Trust Co. v. Keating*, 186 F.3d 1110, 1117 (9th Cir. 1999); *Forsyth*, 114 F.3d at 1481 (citing *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1311 (9th Cir. 1992), cert. denied, 507 U.S. 1004 (1993)).

### 3.    Whether Plaintiff's Complaint Alleges the Existence of an Enterprise

Defendants argue that CBC's RICO claims must be dismissed because they fail adequately to plead an "enterprise."  The complaint alleges that "[t]he following persons, and others presently unknown, have been and are members of and constitute an 'enterprise' within the meaning of RICO: (a) Mike Flores; (b) Ruben Flores; (c) Raul Morales; (d) Efren Morales; (e) Francisco Vasquez; and (f) Quintin Vasquez."[50]

"'[I]t is essential to plead precisely in a RICO case the enterprise alleged and the RICO section allegedly violated.'"  *Johnson v. JP Morgan Chase Bank*, CV 08-0081 LJO SMS, 2008 WL 1925026, *4 (E.D. Cal. Apr. 29, 2008) (quoting *Reynolds v. East Dyer Development Co.*, 882 F.2d 1249, 1251 (7th Cir. 1989)).  CBC pleads RICO claims under 18 U.S.C. §§ 1962(c) and (d).  Section 1962(c) provides:

"It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).

Section 1962(d) provides:

---

[50]Complaint, ¶ 27.

1    "It shall be unlawful for any person to conspire to violate any of the provisions of

2    subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

3    CBC's § 1962(d) claim alleges a conspiracy to violate § 1962(c).[51]

4          Under § 1961(4), an "enterprise" can be "any individual, partnership, corporation,

5    association, or other legal entity, and any union or group of individuals associated in fact although

6    not a legal entity."   As the court noted in *Johnson*, "'[t]he "enterprise" is not the "pattern of

7    racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages.'"

8    *Johnson*, 2008 WL 1925026 at *4 (quoting *Turkette*, 452 U.S. at 583).

9          An "associated-in-fact enterprise 'is a group of persons associated together for a common

10   purpose of engaging in a course of conduct.'"   *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir.

11   2007) (en banc) (quoting *Turkette*, 452 U.S. at 583; see *Johnson*, 2008 WL 1925026 at *4 (same).

12   ("'The enterprise is an entity, for present purposes a group of persons associated together for a common

13   purpose of engaging in a course of conduct,'" quoting *Turkette*, 452 U.S. at 583.  An "associated-in-fact

14   enterprise under RICO does not require any particular organizational structure, separate or otherwise."

15   *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc).[52]  "To establish the existence of

16   such an enterprise, a plaintiff must provide both 'evidence of an ongoing organization, formal or

17   informal,' and 'evidence that the various associates function as a continuing unit.'"   *Id.* (citing *Turkette*,

18   452 U.S. at 583); *Johnson*, 2008 WL 1925026 at *4.

19         Defendants argue that CBC has failed to allege an associated-in-fact enterprise because it has

20   failed to allege "evidence of a common purpose," "evidence of an ongoing organization, formal or

21   informal," or "evidence that the various associates function[ed] as a continuing unit."[53]

22         Citing *Odom*'s statement that under § 1961(4), "[a] single 'individual' [can be] an enterprise,"

23   _____

24      [51]*Id.*, ¶ 45.

25      [52]In *Odom*, the Ninth Circuit overruled its prior requirement an alleged associated-in-fact
26   enterprise must have a sufficiently "ascertainable structure, separate and apart from the structure
     inherent in the conduct of the pattern of racketeering activity."  See *Chang v. Chen*, 80 F.3d 1293, 1295
27   (9th Cir. 1996)).

28      [53]Def.'s Mem. at 9.

CBC contends that it has not alleged an associated-in-fact enterprise, but rather that each individual defendant is an enterprise unto himself.[54]  CBC thus appears to argue that each defendant is both the "person" alleged to be employed by or associated with an enterprise as set forth in § 1962(c), and the enterprise itself.  "'[T]o establish liability under § 1962(c)[, however,] one must allege and prove the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name.'"  *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); and *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984)); see also *River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1461 (9th Cir. 1992) ("[*Rae v. Union Bank*, 725 F.2d 478 (9th Cir. 1984)] stands for the proposition that a single individual or entity cannot be both the RICO enterprise and an individual RICO defendant.  *Rae* simply embodies the maxim that an individual cannot associate or conspire with himself, and in subsequent decisions we have adhered to this narrow reading of *Rae*," citing *United States v. Feldman*, 853 F.2d 648, 656 (9th Cir. 1988) (characterizing the *Rae* rule as providing that a defendant cannot be convicted of associating with himself); *United States v. Benny*, 786 F.2d 1410, 1415-16 (9th Cir. 1986) (holding that although an individual defendant could not associate with himself for RICO purposes, he could associate with his own sole proprietorship), cert. denied, 479 U.S. 1017 (1986))).[55]

---

[54]Pl.'s Opp. at 4-5.

[55]See also *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 646-47 (7th Cir. 1995) ("[W]hen an entity is an individual who conducts his own affairs through a pattern of racketeering, there is no enterprise and hence no valid § 1962(c) RICO claim.  'The only important thing is that [the enterprise] be either formally (as when there is incorporation) or practically (as when there are other people besides the proprietor working in the organization) separable from the individual,'" quoting  *McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985), and citing *United States v. DiCaro*, 772 F.2d 1314, 1319 (7th Cir. 1985) (reversing the RICO conviction of a defendant charged with being the "enterprise"), cert. denied, 475 U.S. 1081 (1986)); *Smith v. First Century Bank*, CV 04-591, 2007 WL 956652, *2 n. 6 (E.D. Tenn. Mar. 29, 2007) ("In their response, plaintiffs contend, relying on the plain language of the statute (18 U.S.C. § 1961(4)), as well as an old Fifth Circuit case, *United States v. Elliott*, 571 F.2d 880, 898 (5th Cir.), cert. denied, 439 U.S. 953 (1978), that Dyer as an individual can constitute an entire enterprise.  However, this court soundly rejects the completely unrestricted view of an individual as an enterprise espoused by cases such as *Elliott*.  As one treatise has observed: It is significant that the term 'individual' is placed in a series of entities that connote legitimate businesses.  The only way to make

1    Furthermore, CBC alleges that each defendant is a "member" of the enterprise, suggesting the

2    existence of an association-in-fact.[56]   The court must therefore determine whether CBC has adequately

3    pled an associated-in-fact enterprise.  See *Westways World Travel v. AMR Corp.*, 182 F.Supp.2d 952,

4    958 (C.D. Cal. 2001) ("The Ninth Circuit had previously held that where there are multiple defendants,

5    'some of the individual defendants may also be identified as members of the alleged association-in-fact

6    enterprise.'  *River City Markets* extended this holding to include multiple-defendant RICO cases when

7    all the individual defendants are named as members of the alleged association-in-fact enterprise,"

8    quoting *River City Markets*, 960 F.2d at 1461-62).

9        The court agrees with defendants that CBC has not sufficiently alleges that defendants are

10   members of an associated-in-fact enterprise.  The complaint does not state that defendants are associated

11   "for a common purpose," does not discuss "evidence of an ongoing organization, formal or informal,"

12   _____

13   sense of the 'individual' as enterprise is by interpreting it to refer to a business operated as a sole
     proprietorship.  A single person criminal enterprise, a lone bank robber for example, is 'an absurd

14   notion,'" quoting David B. Smith and Terrance G. Reed, CIVIL RICO, § 3.07[3] (1987)); *Krouth v.
     Brown*, CV 04-1045 BR, 2006 WL 3758256, *5 (D. Or. Dec. 18, 2006) ("At the heart of a RICO claim

15   is whether there was a RICO 'enterprise.'  An '"enterprise" includes any individual, partnership,
     corporation, association, or other legal entity, and any union or group of individuals associated in fact

16   although not a legal entity.'  'A single individual cannot be both the RICO enterprise and an individual
     RICO defendant.'  The existence of a RICO enterprise is a separate element that a RICO plaintiff must

17   prove" (citations omitted); *McColm v. Abner*, C 06-7369 PJH, 2006 WL 3645308, *6 (N.D. Cal. Dec.
     12, 2006) ("A single individual or entity cannot be both the RICO enterprise and an individual RICO

18   defendant.  Thus, individual defendants cannot be the enterprise.  This is because an individual cannot
     associate or conspire with himself or herself.  Furthermore, for purposes of a single action, a single

19   corporate defendant cannot be both the RICO person and the RICO enterprise under section 1962(c)"

20   (citations omitted)); *Burns v. MBK Partnership*, Civ 03-3021 CO, 2003 WL 23979014, *3 (D. Or. Nov.
     5, 2003) ("A RICO enterprise refers 'to a being different from, not the same as or part of, the person

21   whose behavior the act was designed to prohibit.'  Because the 'person' liable under § 1961(c) must be
     'employed by or associated with' the RICO enterprise, 'the person may not be the same as the RICO

22   enterprise.'  The enterprise must be distinct from the person liable" (citations omitted)); *Von Grabe v.
     Sprint PCS*, 312 F.Supp.2d 1285, 1310 (S.D. Cal. 2003) ("According to *Cedric*, an enterprise is not

23   simply the same 'person' referred to by a different name," citing *Cedric*, 533 U.S. at 161 (holding that

24   a person acting as a president and sole shareholder of a corporation was a separate and distinct person
     from the corporation)).

25

26       [56]See Complaint, ¶ 27.  In fact, the complaint states that "[w]hile the Defendants participated in
     the enterprise and were a part of it, the Defendants also have an existence separate and distinct from the

27   enterprise," thus demonstrating that CBC does not allege that each defendant is an individual enterprise.

28   (See *id.*, ¶ 29).

1   and does not allege that the "various associates function as a continuing unit."  See *Odom*, 486 F.3d at

2   552.[57]  Indeed, as defendants note, CBC does not even allege that defendants know one another, "let

3   alone that they have any kind of common purpose, organization or function."[58]  Moreover, "the

4   fraudulent activity alleged could [have] be[en] committed by any single project foreman without the

5   knowledge or assistance of the others."[59]  CBC has thus failed to allege the "enterprise" element of its

6   RICO claims.

7   **4.     Whether Plaintiff's Complaint Adequately Alleges Predicate Acts**

8            To plead a pattern of racketeering activity, plaintiff must allege two or more predicate acts within

9   ten years.  See 18 U.S.C. § 1961(5) (defining a "pattern of racketeering activity" as requiring "at least

10  two acts of racketeering, one of which occurred after the effective date of this chapter and the

11  last of which occurred within ten years (excluding any period of imprisonment) after the commission

12  of a prior act of racketeering activity"); see also *Odom*, 486 F.3d at 552 (stating that an ongoing

13  organization is a vehicle for the commission of two or more predicate crimes).

14           CBC's complaint alleges as examples of the predicate acts defendants committed in their

15  "scheme to misappropriate, convert and/or embezzle funds" the reporting of hours for framers who did

16  not work on CBC projects and the overstatement of a particular framer's hours or wage rate.[60]  More

17  specifically, CBC pleads that(1) defendants committed wire fraud in violation of 18 U.S.C. § 1343 by

18  transmitting false payroll reports to it via facsimile "on a weekly basis for at least the past for years";

19  and (2) they committed mail fraud in violation of 18 U.S.C. § 1341 by receiving payroll checks drawn

20  on CBC's account via mail that were sent in response to their false and fraudulent representations.[61]

21           "Mail and wire fraud must be [pled] with particularity in accordance with Rule 9(b)." *Evercrete*

22

23           [57]In conclusory terms, the complaint alleges that "the enterprise was an ongoing enterprise which
     engaged in and whose activities affected interstate commerce."  (*Id.*, ¶ 28).

24

25           [58]Def.'s Mem. at 9.

26           [59]*Id.*

27           [60]See Complaint, ¶¶ 23, 34.

28           [61]*Id.*, ¶¶ 35-36.

18

1  *Corp. v. H-Cap Ltd.*, 429 F.Supp.2d 612, 624 (S.D.N.Y. 2006) (citing *First Capital Asset Mgmt., Inc.*

2  *v. Satinwood, Inc*., 385 F.3d 159, 178 (2d Cir. 2004) ("all allegations of fraudulent predicate acts[ ] are

3  subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)")).  "Where a

4  plaintiff claims that specific mail or wire transmissions 'were themselves fraudulent, i.e., themselves

5  contained false or misleading information, the complaint should specify the fraud involved, identify the

6  parties responsible for the fraud, and where and when the fraud occurred.'" *Id.* (quoting *In re Sumitomo*

7  *Copper Litig*., 995 F.Supp. 451, 456 (S.D.N.Y. 1998)); see also *Dole Food Co., Inc. v. Gutierrez*, No.

8  CV039416 NM(PJWx), 2004 WL 3737123, *8 (C.D. Cal. July 13, 2004) ("To plead racketeering

9  activity, Dole has alleged that the Nicaraguan Defendants engaged in the predicate acts of mail and wire

10 fraud in violation of 18 U.S.C. §§ 1341 and 1343.  These types of predicate acts must be pled with

11 particularity, including 'time-place-manner-content details on the alleged instances of mail and wire

12 fraud,'" quoting *Tate v. Pac. Gas & Elec. Co.*, 230 F.Supp.2d 1072, 1084 (N.D. Cal. 2002), and citing

13 *Lancaster Cmty. Hosp. v. Antelope Valley Med. Group*, 940 F.2d 397, 405 (9th Cir. 1991); and *Moore*

14 *v. Kayport Package Express, Inc*., 885 F.2d 531, 541 (9th Cir. 1989) (allegations of fraud under §

15 1962(c) "must identify the time, place, and manner of each fraud plus the role of each defendant in each

16 scheme")).

17        "[W]ere the plaintiff claims that the mail or wires were simply used in furtherance of a scheme

18 to defraud, [however,] the complaint 'need not be specific as to each allegation of mail or wire fraud'

19 as long as 'the nature of the RICO scheme is sufficiently pleaded so as to give notice to the

20 defendants.'" *Evercrete*, 429 F.Supp.2d at 624 (quoting *First Interregional Advisors Corp. v. Wolff*, 956

21 F.Supp. 480, 485 (S.D.N.Y. 1997)).

22        Because CBC asserts that the actual wire and mail transmissions themselves were fraudulent,

23 it "must identify the time, place, and manner of each fraud plus the role of each defendant in each

24 scheme." *Moore*, 885 F.2d at 541.  CBC maintains that it has done so because it has detailed the nature

25 of its operations, explained how payroll is made, and alleged "the specific acts undertaken by the

26 defendants in falsifying payroll reports over a weekly basis during the last four years."[62]  It argues that

27 ────────────────

28        [62]Pl.'s Opp. at 13.

"the complaint need not specify the time, place and content of each mail communication where the nature and mechanics of the underlying scheme [are] sufficiently detailed, and [that under those circumstances,] it is enough to plead the general content of the misrepresentation without stating the exact words used."[63] *Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F.Supp. 213, 229 (S.D.N.Y. 1992) (citations omitted).

Construing the allegations in the light most favorable to plaintiff, it has arguably pleaded the time, place, manner, and content of the alleged fraud sufficiently, in that it states the time period during which the payroll misrepresentations were made (on a weekly basis for the last four years); identifies the place where the fraud occurred (faxes were received in Canoga Park and checks were mailed to Stockton) and the manner in which the fraud was carried out (by facsimile and mail), and states the content of the fraudulent statements (reporting the hours of framers who did not work on CBC projects, overstating hours or wage rates, seeking payment for work performed on side projects, and submitting payroll reports using false names).[64]

CBC's allegations regarding the predicate acts nonetheless fail to comply with the heightened pleading requirements of Rule 9(b), however, because the complaint does not  connect the allegations of fraud to each individual defendant.  See *id.* at 230 ("Plaintiffs are also required under Rule 9(b) to connect the allegations of fraud to each individual defendant," citing *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986); and *Landy v. Mitchell Petroleum Technology Corp.*, 734 F.Supp. 608, 620 (S.D.N.Y. 1990)).  "A complaint sounding in fraud may not rely on sweeping references to acts by all or some of the defendants because each named defendant is entitled to be apprised of the facts surrounding [his involvement in] the alleged fraud." *Id.* (citation omitted); see also *Sun Sav. and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 196 (9th Cir. 1987) (the purpose of requiring this level of particularity is "to enable the defendant to prepare an adequate answer," citing *Bosse v. Crowell Collier & MacMillan*, 565 F.2d 602, 611 (9th Cir. 1977)).  To satisfy Rule 9(b), CBC must demonstrate that each defendant "had a specific intent to defraud either by devising, participating in, or aiding and abetting the scheme." *Center*

[63]*Id.*

[64]Complaint, ¶ 23.

20

1   *Cadillac*, 808 F.Supp. at 230 (citation omitted). "General allegations that the defendants 'conspired' in

2   the scheme do not sufficiently attribute responsibility for fraud to each individual defendant." *Id.*

3   (citation omitted).

4         CBC has not detailed any defendant's participation in the scheme sufficiently. It has not pleaded

5   facts regarding which defendant committed which allegedly fraudulent act, or facts supporting the

6   alleged fraudulent intent of each defendant.[65]  See *Travaglia v. Johnston*, 42 F.3d 1402, 1994 WL

7   615848, *2 (9th Cir. Nov. 4, 1994) (Unpub. Disp.) ("The complaint must describe the alleged fraud in

8   enough detail that a defendant can prepare a sufficient answer. 'While statements of the time, place and

9   nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are

10   insufficient,'" quoting *Moore*, 885 F.2d at 540).  Instead, CBC has lumped together the conduct of all

11   defendants, stating, for example, that "*[d]efendants would* use alias names to submit payroll requests

12   to CBC's corporate offices via facsimile."[66]  Defendants cannot defend against the general, non-specific

13   claims asserted.  If CBC wishes to allege that each defendant committed all of the acts specified in the

14   complaint, it must do so with greater particularity. Cf. *Mostowfi v. 12 Telecom Int'l, Inc.*, No. 06-15597,

15   2008 WL 624012, *2 (9th Cir. Mar. 4, 2008) (Unpub. Disp.) ("The plaintiffs' RICO cause of action fails

16   to meet Rule 9(b)'s heightened pleading standard.  Most of the alleged predicate acts are general

17   statements about actions committed by the defendants that fail to identify the 'who, what, when, where

18   and how' of the misconduct charged.  Likewise, several predicate acts allege violations of federal

19   criminal statutes but do not specify who committed the violation, and when and where it occurred.  As

20   the district court correctly observed, these problems are exacerbated because the plaintiffs lump together

21   the defendants without identifying the particular acts or omissions that each defendant committed.").

22   Accordingly, the RICO claims must be dismissed for failure to plead the predicate acts with sufficient

23   particularity under Rule 9(b).

24       **5.**    **Whether Plaintiff Has Alleged a Pattern of Racketeering Activity**

25         A pattern of racketeering activity "is proved by evidence of the requisite number of acts of

26

27     [65]See Def.'s Reply at 8.

28     [66]Complaint, ¶ 23(d).

racketeering committed by the participants in the enterprise" – i.e., at least two acts within ten years of one another. *Odom*, 486 F.3d at 549; 18 U.S.C. § 1961(5). "'A "pattern" of racketeering activity also requires proof that the racketeering predicates are [1] related and [2] . . . amount to or pose a threat of continued criminal activity.'" *Best Deals on TV, Inc. v. Naveed*, C 07-1610 SBA, 2007 WL 2825652, *5 (N.D. Cal. Sept. 26, 2007) (quoting *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004)). "The 'related to' requirement is satisfied if the alleged acts 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Id.* (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989)). "In turn, 'to satisfy the continuity requirement,[a complainant] must prove either a series of related predicates extending over a substantial period of time, i.e., closed-ended continuity, or past conduct that by its nature projects into the future with a threat of repetition, i.e. open-ended continuity.'" *Steam Press Holdings, Inc. v. Hawaii Teamsters and Allied Workers Union, Local 996*, 302 F.3d 998, 1011 (9th Cir. 2002) (quoting *Howard v. America Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000)); see also *Naveed*, 2007 WL 2825652 at *5 ("Closed-ended continuity exists when there is 'a series of related predicates extending over a substantial period of time.' . . . Open-ended continuity requires 'past conduct that by its nature projects into the future with a threat of repetition' or constitute the enterprise's 'regular way of doing business,'" quoting *H.J. Inc.*, 492 U.S. at 241-42; *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995)).

Defendants argue that CBC has failed to satisfy both the relationship and continuity requirements.[67] CBC counters that it has pleaded the alleged predicate acts were "related" because they were all undertaken for the intended purpose of "bilking money from CBC."[68] See *H.J. Inc.*, 492 U.S. at 240. As pleaded, however, the complaint does not establish that the acts were related, as CBC has failed to establish a relationship between the defendants. Although the acts appear to be related in the sense that they are similar and directed at a single victim, none of the facts alleged in the complaint gives rise to an inference that they were anything other than a series of isolated events. Consequently,

---

[67]Def.'s Mem. at 10-11.

[68]Pl.'s Opp. at 11.

CBC has failed adequately to plead that defendants engaged in a pattern of racketeering activity.  See *Dorian v. Harich Tahoe Development*, C 94-3387 DLJ, 1996 WL 925859, *3 (N.D. Cal. Jan. 16, 1996) ("Although plaintiffs provide the dates, content, and parties involved in these misrepresentations, it is unclear how each of the named defendants participated in these fraudulent acts.  Not only are these allegations insufficient under Rule 9(b), but they also render it impossible to determine whether the acts comprising the alleged racketeering activity are sufficiently related.  Therefore, the Court hereby dismisses plaintiffs' RICO claims").[69]

### 6.    Plaintiff's RICO Conspiracy Claim

Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."  18 U.S.C. § 1962(d).  To plead a claim under § 1962(d), plaintiff must adequately plead a claim under one of §§ 1962(a), (b) or (c).  See *Wagh v. Merits Direct, Inc.*, 363 F.3d 821, 831 (9th Cir. 2003).  Because CBC has not sufficiently alleged a § 1962(c) claim, its § 1962(d) claim must also be dismissed.  See *Neibel v. Trans World Assurance Co.*, 108 F.3d 1123, 1127 (9th Cir.1997) ("[I]f the section 1962(c) claim does not state an action upon which relief could ever be granted, regardless of the evidence, then the section 1962(d) [conspiracy] claim cannot be entertained")

### C.    Remainder of the Action

As the court has granted defendant's motion to dismiss plaintiff's RICO claims under Rule

---

[69]As respects the continuity requirement, CBC argues that it has sufficiently alleged closed-ended continuity by asserting that defendants submitted false payroll reports on a weekly basis for four years. (Pl.'s Opp. at 11).  While CBC has not adequately alleged relatedness, it has pled continuity by alleging a series of acts "extending over a substantial period of time."  See *H.J. Inc.*, 492 U.S. at 242 ("A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct"); see also *Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir. 1989) ("Continuity too is present: The 'related predicates extend[ed] over a substantial period of time,' here a matter of years, from 1980 until the filing of this action," citing *H.J. Inc.*, 492 U.S. at 242); *Naveed*, 2007 WL 2825652 at *5 ("In their amended complaint, the plaintiffs allege a pattern of racketeering activity beginning in 2005 and continuing until April 2007.  Hence, as alleged by the plaintiffs, the defendants' alleged scheme has been in existence for well over one year and has extended over a substantial period of time").

23

12(b)(6), the only claims remaining are CBC's state law claims for fraud, conversion, breach of fiduciary duty, imposition of a constructive trust, and an accounting.  Defendants ask the court to dismiss these remaining claims under Rule 12(b)(1) for lack of subject matter jurisdiction.  The court declines to grant defendants' motion at this time, as it has granted CBC twenty (20) days' leave to amend to replead its RICO claims.  Should plaintiff choose not to reassert its federal claims, it must show cause within thirty (30) days why the court should retain supplemental jurisdiction over the state law claims.

### III.  CONCLUSION

For the foregoing reasons, the court denies defendants' motion to dismiss for lack of venue, but grants their motion to dismiss CBC's RICO claims under Rule 12(b)(6).  The court grants plaintiff twenty days' leave to amend the claims.  Should CBC choose not to replead the RICO claims, it must show cause within thirty days why the court should continue to exercise supplemental jurisdiction over the state law claims.

DATED: May 19, 2008

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE