Steven E. Burton (SBN 93590)
SPECIALE & BURTON, A.P.C.
21300 Victory Blvd., Ste. 820
Woodland Hills, CA 91367
Telephone: (818) 884-8525
Facsimile: (818) 884-0806
Email: sburton@speciale-burton.com

Attorneys for Plaintiff CBC FRAMING, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

CBC FRAMING, INC., a California
corporation,

               Plaintiff,

       vs.

MICHAEL A. FLORES, aka MIKE FLORES,
RUBEN FLORES, RAUL MORALES, aka
RAUL MORALES OLVERA, EFREN
MORALES aka EFREN MORALES
OLVERA, FRANCISCO BADILLO aka
FRANCISCO BADILLO VASQUEZ,
QUINTIN BADILLO, aka QUINTIN
BADILLO VASQUEZ and DOES 1 through
10 inclusive,

               Defendants.

Case No. CV 08-00150 MMM (JCx)

**FIRST AMENDED COMPLAINT FOR:**

1. **Violation of R.I.C.O.[18 U.S.C. § 1962(c)**
2. **Violation of R.I.C.O. [18 U.S.C. § 1962 (d)**
3. **Fraud;**
4. **Conversion;**
5. **Breach of Fiduciary Duty;**
6. **Constructive Trust;**
7. **Accounting**

DEMAND FOR JURY TRIAL

Plaintiff alleges:

## I.    JURISDICTION AND VENUE

1.    The Court has subject matter jurisdiction over this action pursuant to the

Racketeer Influenced and Corrupt Organizations Act, 18 USC § 1964(c), and 28 USC § 1331.

1

2.    The Court has supplemental jurisdiction over the state law claims for relief pursuant to 28 USC § 1367 since these claims arise from a common nucleus of operative facts and are so intertwined with the federal claims for relief as to make an exercise of the Court's jurisdiction appropriate

3.    Venue is proper under 18 U.S.C. § 1965(a) and 28 USC § 1391(b)(2) in that a substantial part of the events or omissions on which the Plaintiff's claim are based occurred in this district, as alleged below.

## II.    PARTIES

4.    Plaintiff CBC Framing, Inc. ("CBC") is and at all times herein mentioned was, a corporation duly organized and existing in accordance with the laws of the State of California with its principal place of business in Canoga Park in the County of Los Angeles, State of California.

5.    Defendant Michael A. Flores, aka Mike Flores ("Mike Flores") is and at all times herein mentioned was an individual with his place of residence in the City of Escalon, County of San Joaquin, State of California.

6.    Defendant Ruben Flores is and at all times herein mentioned was an individual with his place of residence in the City of Marysville, County of Yuba, State of California.

7.    Defendant Raul Morales, aka Raul Morales Olvera ("Raul Morales") is and at all times herein mentioned was an individual with his place of residence in the City of Bay Point, County of Contra Costa, State of California.

8.    Defendant Efren Morales, aka Efren Morales Olvera ("Efren Morales") is and at all times herein mentioned was an individual with his place of residence in the City of Concord, County of Contra Costa, State of California.

2

**FIRST COMPLAINT BY CBC FRAMING, INC.**

9.     Defendant Francisco Badillo, aka Francsico Badillo Vasquez, ("Francisco Vasquez") is and at all times herein mentioned was an individual with his place of residence in the City of Stockton, County of San Joaquin, State of California.

10.     Defendant Quntin Badillo, aka Quintin Badillo Vasquez ("Quintin Vasquez") is and at all times herein mentioned was an individual with his place of residence in the City of Stockton, County of San Joaquin, State of California.

11.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 10, inclusive, are unknown to the Plaintiff, who therefore sues said Defendants by such fictitious names.

12.     At all times relevant to this action, each Defendant, including those fictitiously named, was the agent, servant, employee, partner, joint venturer, or surety of the other Defendants and was acting within the scope of said agency, employment, partnership, venture, or suretyship, with the knowledge and consent or ratification of each of the other Defendants in doing the things alleged herein.

### III.     GENERAL ALLEGATIONS

13.     Plaintiff CBC is a licensed framing contractor in the State of California, with its corporate offices located in Canoga Park, CA.  All payroll processing and payroll check issuance by Plaintiff occurs at CBC's Canoga Park office.

14.     As part of its business, CBC employs crews of carpenters and other workers ("framers") to construct primarily residential housing, apartment, condominium and townhome projects throughout the State of California.  CBC's crews vary in size depending on the size of the project, time for completion, number of phases in a particular project, and other factors.  The size of the crews will also vary throughout the duration of a particular project due to personnel

changes, reassignment of framers to another project, or laying off framers when there is insufficient work to keep them employed.  Framers will commonly leave CBC's employ to work for another framing contractor or for another occupation and then return to CBC's employ.

15.    CBC's crews are typically supervised at the field level by a job foreman, whose responsibility it is to oversee the day to day work of the crew at a particular project.  Generally speaking, it is the responsibility of each individual project foreman to hire and fire members of his own crew, subject to the approval of CBC's general superintendent.

16.    CBC employs general superintendents who generally oversee 6 to 8 projects at any given time and provide direct supervision to the project foremen.  Generally, it is the responsibility of the general superintendent to hire and fire the project foreman.

17.    The general superintendents in turn report to CBC's president and/or vice-president at CBC's corporate office in Canoga Park, CA.

18.    At any given time during the period mentioned herein, CBC would have between 800 and 2,500 framers working on multiple projects in various locations throughout the State of California, with a total of approximately 8,000 to 10,000 different framers working during said time period.

19.    CBC pays its foremen and framers on a weekly basis for work performed and reported by the project foremen to CBC for the prior week.  The project foreman is charged with the responsibility of keeping track of the individual framers on their projects, and accounting for the work performed by each framer on the foreman's crew.  Each foreman is charged with the responsibility at the end of each workweek to prepare a written payroll report ("payroll report") with the names of the framers and the foreman who were working on the project that week, the

4

1  required payroll information and then, by use of the telephone, transmit the payroll sheets via

2  facsimile to CBC's corporate offices in Canoga Park, CA.

3    20.    CBC's payroll department will, in turn, issue payroll checks to the individual

4  framers and foremen based on the payroll sheets submitted by the project foreman.  In the

5
6  instances alleged herein, the checks are sent via overnight courier service to CBC's facility in

7  Stockton, CA, whereupon the general superintendents will have the payroll checks delivered to

8  the CBC's jobsites, or the project foremen will pick up the payroll checks for their crews and

9  deliver same to the project site.

10
11    21.    In either event, upon delivery of the payroll checks to the project site, the foreman

12  will pass out the checks to each of the check payees.

13    22.    Accordingly, the accuracy of the payroll depends upon the accurate reporting of

14  the framers on each individual project by that project's foreman. Because CBC's simultaneously

15  conducts operations at several projects throughout the State of California, and because the size of

16
17  each framing crew fluctuates for the reasons stated above, accurate payroll reporting is

18  dependent upon the integrity of the project foreman in accurately identifying on a weekly basis

19  the names of the framers on the foreman's crew and their correct payroll information.

20                **FIRST CLAIM FOR RELIEF**
21          **(Violation of RICO - 18 U.S.C. § 1962(c) – All Defendants)**

22
23    23.    Plaintiff repeats and realleges paragraphs 1 through 22 herein and makes the same

24  a part hereof by reference.

25    24.    Plaintiff and Defendants are "persons" within the meaning of 18 U.S.C. §

26  1961(3).

27
28    25.    Plaintiff is a "person" within the meaning of 18 U.S.C. § 1964(c).

**FIRST COMPLAINT BY CBC FRAMING, INC.**

**The RICO Enterprise:**

26.     The following persons, and others presently unknown named as Doe defendants, have been and are members of and constitute an "enterprise" within the meaning of RICO:  (a) Mike Flores; (b) Ruben Flores; (c) Raul Morales; (d) Efren Morales; (e) Francisco Vasquez; and (f) Quintin Vasquez.

27.     Defendants Mike Flores and Ruben Flores are brothers.  Defendants Raul Morales and Efren Morales are brothers. Defendants Francisco Vasquez and Quintin Vasquez are twin brothers.  Defendants Mike Flores and Efren Morales are close friends.

28.     Unless otherwise noted, at all times relevant herein, Defendant Mike Flores was Plaintiff CBC's general superintendent who had overall supervisory responsibility for the CBC projects described herein.

29.     Defendant Ruben Flores was employed by Plaintiff as a CBC project foreman on the following CBC projects, viz:  Sycamore Villas and Lyon Shores located in Hercules, California ("Hercules projects") during the time period between approximately July 2001 and April 2004; the Rose Garden project located in San Ramon, CA ("Rose Garden project") during the period between approximately February 2005 and March 2006; the Sycamore, Cottonwood, Magnolia and Savanna projects in Alamo, CA ("Alamo projects") during the time period between approximately January 2006 and March 2007.

30.     Defendants Francisco Vasquez and his brother, QuintinVasquez, were members of Defendant Ruben Flores' framing crew on the Rose Garden and Alamo projects and, in particular, Defendant Francisco Vasquez was Defendant Ruben Flores' assistant foreman on those projects.

FIRST COMPLAINT BY CBC FRAMING, INC.

31.     Defendant Efren Morales was employed by Plaintiff CBC as project foreman on the following CBC projects, viz:  Stanford Place in Pittsburg, CA ("Stanford Place") between approximately May 2005 and August 2005; Teal Cove Small in Oakley, CA ("Teal Cove project") between approximately September 2005 and December 2006; Taylor Woodrow Creekside in San Jose, CA ("Creekside project") between approximately March 2006 and May 2007.

32.     At all times relevant hereto, Defendant Raul Morales was employed by Plaintiff CBC as a project foreman on the following CBC projects, viz: Stanford Place between approximately September 2005 and July 2006; and the Viento Terra Serena Project in Milpitas, CA ("Terra Serena project") between approximately December 2006 and December 2007.

33.     During the periods of time alleged herein, Defendants Mike Flores, Ruben Flores, Raul Morales, Efren Morales, Francisco Vasquez and Quintin Vasquez each associated together for the common purpose to form an enterprise within the meaning of 18 U.S.C. 1961(4) which devised a multi-faceted scheme whereby Defendants, and each of them, using their positions of trust and confidence in the employ of Plaintiff, and with the deliberate intention and common purpose to defraud CBC  by, *inter alia*, falsely reporting payroll to CBC in order to embezzle and convert CBC's funds for the Defendants' own use and benefit. During the times mentioned herein, the enterprise was an ongoing enterprise which engaged in and whose activities affected interstate commerce.  The Defendants' participation in the enterprise was necessary for the successful operation of the Defendants' scheme.

In general, the schemes undertaken by the enterprise took one or more of the following forms:

7

a.   <u>Reporting hours for framers who did not work on CBC Projects</u>. Defendants Mike Flores, Ruben Flores, Efren Morales and Raul Morales, with the aid and assistance of Defendants Francisco Vasquez and Quintin Vasquez, would intentionally prepare and submit, or cause to prepare and submit payroll reports, through facsimile transmissions to CBC's corporate offices in Canoga Park CA , that would state the names of framers who were not working on CBC projects for the time periods indicated in the payroll submission.  Upon receipt of the payroll reports, CBC would issue payroll checks in the names of all of the framers listed in the payroll reports and then transmit the checks via overnight courier to its Stockton, CA facility for pick up by or delivery to each of the project foreman.  Upon receipt of the payroll checks from CBC, the foreman would distribute the payroll checks to the individual framers who actually did perform work on a CBC project for the relevant time period and then the Defendants would retain the checks issued in the names of the framers who did not work for CBC during the relevant time period and would cash those checks through one or more check cashing services and retain the funds for their own use and benefit.

b.   <u>Reporting payroll for CBC employee's working on Defendants' side projects</u>. Defendants and each of them would run side projects unrelated to CBC, such as remodeling one of more of the Defendants' own residences or the Defendants would offer their construction services to other parties who needed construction work to their own properties.  In so doing, the Defendants, and each of them, would hire framers employed at one time or another by CBC, and knowingly and intentionally submit payroll requests for those employees to CBC's corporate offices via the same facsimile transmission process alleged above.  Upon receipt of the payroll checks, Defendants and each of them would issue those payroll checks to the employees that

**FIRST COMPLAINT BY CBC FRAMING, INC.**

worked on the side jobs described above when, in fact, none of the framers' services in these instances were rendered on behalf of CBC.

c.    <u>Misappropriation of CBC's lumber and other framing materials</u>. Defendants and each of them would pilfer and steal lumber and other framing materials purchased and obtained by CBC for its projects and use and incorporate same into Defendants' side projects. In doing so, Defendants would use CBC employees on CBC's payroll to obtain the pilfered materials from CBC's project sites and CBC would pay these employees through Defendants' false payroll reports submitted to CBC.

d.    <u>Overstating a framers hours or wage rate</u>. Defendants would knowingly and intentionally submit payroll reports via facsimile transmission to CBC's corporate office which would falsely overstate a framer's pay for the relevant time period. CBC would issue and transmit payroll checks in accordance with its customary practice to the Defendants. Upon receipt of these payroll checks the Defendants would have the checks in the overstated amounts cashed by or on behalf of the individual framer to whom the check was issued and that framer would, in turn, kick back the overstated portion of the wages to the Defendants often under threats of intimidation such as denying the framer further employment.

e.    <u>Submission of payroll reports using Defendants' alias names</u>. Defendants would use alias names for framers to submit payroll requests to CBC's corporate offices via facsimile, in addition to the framers' correct names, to falsely report work performed on a project and, upon receipt of the payroll checks from CBC for the falsely reported names, keep the check and have it cashed by a payroll service and retain the cash for their own use and benefit.

Specific instances of the Defendants' conduct in furtherance of the RICO enterprise are as follows:

9

34.     During the course of the Hercules, Rose Garden and Alamo Projects, Defendant Ruben Flores would submit weekly payroll reports that included the names of employees who had not worked on these projects and would receive CBC's payroll checks from CBC's weekly delivery and have those checks cashed and Defendant Ruben Flores would keep the cash from those payroll checks for himself and for the enterprise.  During the same time, Defendant Ruben Flores, would submit payroll reports falsely overstating CBC employees' wages, would receive the payroll checks from CBC submitted on the basis of these false payroll reports, have the checks cashed and require his crew members to kick back to him overstated portions of their checks and would keep the cash for himself and for the benefit of the enterprise.

35.     During the same time frame for the Rose Garden and Alamo projects described in paragraph 34, Defendant Francisco Vasquez was Defendant Ruben Flores' assistant foreman on the Rose Garden and Alamo Projects, and Defendant Quintin Vasquez was a carpenter on Defendant Ruben Flores' framing crew.  Defendants Francisco Vasquez and Quintin Vasquez knowingly aided and abetted Defendant Ruben Flores' submission of the false payroll reports by providing the names of CBC employees for whom the false payroll reports would be submitted and further aided and abetted Defendants Ruben Flores' fraudulent conduct by having the payroll checks provided by CBC in response to the false payroll reports cashed and provided that cash to either Defendants Mike Flores and Ruben Flores for the benefit of the enterprise.

36.     Furthermore, during the course of the Rose Garden project, Defendants Mike Flores and Ruben Flores had undertaken a side project on a home in Blackhawk, CA and, during the period between July 2005 and August 2005 while working on that side project, employed CBC employees to work on the side project and submitted payroll reports for those employees to CBC.  CBC issues payroll checks to those employees and delivered same to Defendants Mike

10

Flores and Ruben Flores by U. S. Mail.  Said Defendants received the checks issued by CBC for those employees and paid those employees with these CBC's checks, notwithstanding the fact that Defendants Mike Flores and Ruben Flores knew that these employees had not performed work on behalf of CBC during the time periods reported.

37.     Defendant Efren Morales owned a single family residence located at 2131 Huron Drive, Concord, CA (the "Concord Residence").  During the period between approximately September 2005 and December 2007, Defendant Efren Morales remodeled the Concord Residence using labor provided by CBC employees and materials from CBC's Creekside Project that were procured by CBC employees on his framing crew, with the knowledge, authorization and consent of Defendant Mike Flores, who was the general superintendent in charge of the Creekside Project.  In particular, Defendant Efren Morales, with Defendant Mike Flores' knowledge, authorization and consent, used at least 4 CBC employees to provide labor for the remodel of the Concord residence, and then through facsimile transmission knowingly and deliberately submitted false payroll reports to CBC's office in Canoga Park, CA for those employees for the hours that they worked on the Concord Residence even though the payroll reporting for those employees was unrelated to any of CBC's projects.  Without any knowledge that the payroll was for the Concord Residence, CBC in turn delivered payroll checks for those employees who worked on the Concord Residence to Defendant Efren Morales who used those checks to pay the CBC employees for the labor that they performed on the Concord residence.

38.     Defendant Efren Morales, with the knowledge, authorization and consent of Defendant Mike Flores, and with the intention of embezzling and converting CBC's payroll fund, falsely reported payroll on the Stanford Place, Teal Cove and Creekside projects on a weekly basis during the course of those projects by submitting names of individual CBC

FIRST COMPLAINT BY CBC FRAMING, INC.

employees who did not perform work on those projects, or not during the time periods reported, and in return received payroll checks from CBC for those employees, retained those checks, had them cashed and kept and shared the cash from those projects with Defendant Mike Flores. During the same period of time, Defendant Efren Morales, with the knowledge, authorization and consent of Defendant Mike Flores, deliberately overstated certain employees' wages for the Stanford Place, Teal Cove and Creekside projects on payroll reports submitted to CBC and would have the checks issued by CBC in reliance on those payroll reports cashed and then would retain the overstated portions of those cashed checks for his own use and benefit and for the benefit of the enterprise.

39.     Defendant Mike Flores directed another project foreman (not a defendant in this action) at the Teal Cove project during the latter stages of that project in or about November or December 2006 to report payroll for employees who had not worked on the Teal Cove project during the relevant time period, which the foreman did.  In turn, CBC issued checks based on the fraudulent payroll report prepared at Defendant Mike Flores' direction, delivered them to the foreman who in turned cashed the checks or had them cashed, with the proceeds thereof going to Defendant Mike Flores.

40.     During the course and scope of the Creekside project, in or about February 2007, Defendant Mike Flores was engaged in a side project, framing a house in Sunnyvale, CA.  In furtherance of the enterprise, Defendant Mike Flores employed CBC employees on the Sunnyvale project and, at Defendant Mike Flores' direction, had Defendant Efren Morales, the foreman of the Creekside Project, falsely report payroll for those employees to CBC as if they had worked on the Creekside project.  In reliance on these payroll reports, CBC issued payroll checks for those employees and delivered them by mail to Defendant Mike Flores and/or

Defendant Efren Morales, the foreman of the Creekside project, who used those checks to pay the CBC employees working on Defendant Mike Flores' Sunnyvale project.

41.     In connection with the Sunnyvale side project, Defendant Mike Flores, with the assistance and cooperation of his brother, Defendant Ruben Flores, and Defendant Efren Morales, reported a worker that had been injured on Defendant Mike Flores' Sunnyvale project as being employed and injured on the Alamo Project in order to claim worker's compensation benefits for the injured employee.  CBC had previously issued payroll checks to this employee based upon false payroll reports submitted by Defendant Efren Morales to CBC without CBC's knowledge that the employee's hours were being reported for work not done on the Creekside Project.  After receiving payroll checks from CBC for the falsely reported time, the Defendants then refused to pay the worker with checks issued to him under the Creekside project for worker's labor on the Sunnyvale project, and kept the checks, cashed them and retained the proceeds for the benefit of the enterprise.

42.     During the course of the Stanford Place and Terra Serena projects (between approximately September 2005 and December 2007), Defendant Raul Morales, who was employed as CBC's foreman for these projects, and with the knowledge, authorization , consent and assistance of Defendant Mike Flores, engaged in side projects remodeling single family residences owned by Defendant Raul Morales at 110 Marys Ave., Bay Point, CA ("Bay Point residence") and at 891 Stonegate, Oakley, CA ("Oakley residence"), as well as a side project in Antioch, CA ("Antioch project") using labor provided by CBC employees and materials taken from CBC project sites, all without the knowledge or consent of CBC.  As part of the conduct of the enterprise, Defendant Raul Morales submitted payroll reports via facsimile transmission to CBC's Canoga Park offices for at least six CBC employees for the time that these employees

FIRST COMPLAINT BY CBC FRAMING, INC.

worked on the Oakley and Bay Point residences and/or Antioch Project. Based on these payroll reports, and without any knowledge that the payroll reports included time reported for these side projects, CBC issued payroll checks for those employees and delivered the checks to Defendant Raul Morales who distributed those checks to the CBC employees to pay them for their labor performed on the Oakley, Bay Point and Antioch projects.

43.     In addition, Defendant Raul Morales, under the authorization, direction and consent of Defendant Mike Flores, either personally or through CBC employees acting at his direction or the direction of Defendants Mike Flores would  pilfer materials from the CBC's Teal Cove and  Stanford Place projects and use the materials for Defendant Raul Morales' side projects at Oakley, Bay Point and Antioch.

44.     Additionally, and in furtherance of the conduct of the enterprise, during the Stanford Place and Terra Serena projects, with the knowledge, authorization and consent of Defendant Mike Flores, Defendant Raul Morales intentionally and deliberately submitted weekly payroll reports via facsimile transmission to CBC falsely reporting wages for CBC employees who had not worked on these projects and, as with the other defendants noted herein, kept the CBC payroll checks issued to those employees, cashed them, and kept the cash proceeds thereof for his own use and benefit and for the benefit of the  enterprise.  During the same time, Defendant Raul Morales, acting with the knowledge, authorization and consent of Defendant Mike Flores, would submit payroll reports falsely overstating CBC employees' wages, would receive the payroll checks from CBC submitted on the basis of these false payroll reports, have the checks cashed and require his crew members to kick back to him overstated portions of their checks and would keep the cash for himself and for the benefit of the enterprise.

//

**Pattern of Racketeering Activity**

45.     § 1961(1) of RICO provides, *inter alia,* that "racketeering activity" is any indictable act under any provisions of Title 18, United States Code § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud).

46.     For the purpose of executing and/or attempting to execute their scheme to defraud the Plaintiff, the Defendants in violation of 18 U.S.C. § 1343, transmitted by wire through correspondence, faxes and other materials false and fraudulent misrepresentations to the Plaintiff concerning the payroll reporting on CBC's projects on a weekly basis for at least the past four years as alleged in paragraphs 27 through 44 herein..

47.     For the purpose of executing and/or attempting to execute their scheme to defraud the Plaintiff, the Defendants in violation of 18 U.S.C. § 1341, received in post offices and/or in authorized repositories by mail matter and things to be sent or delivered by the United States Postal Service, or through private or commercial interstate carriers, including, without limitation, payroll checks drawn on CBC's account as a result of the false and fraudulent representations and pretenses made by the Defendants as alleged in paragraphs 27 through 44 herein.

48.     As alleged herein in paragraph 27 through 44, Defendants conducted and/or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(5).  Each such act of racketeering activity was related in that participants were either related by blood, worked for the same employer, knew each other, were all under the general supervision of Defendant Mike Flores, all participated in a common scheme to submit false payroll reports to Plaintiff CBC under a common pattern of deceit, or aided and abetted that scheme, and would cooperate with one another in furthering the scheme operated by

**FIRST COMPLAINT BY CBC FRAMING, INC.**

the enterprise, and had similar purposes, that being to embezzle and/or convert payroll funds for the benefit of the enterprise, all as alleged in paragraphs 27 through 44 herein.

49.    Plaintiff is informed and believes that there have been numerous other predicate acts by the Defendants that are presently unknown to the Plaintiff.

50.    As a direct and proximate result of the Defendants' illegal conduct in violation of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business or property by issuing payroll checks in the manner alleged herein in the names of individuals who either did not work on CBC's projects, or to individuals for whom Defendants falsely overstated the amount of their wages.  Defendants would either kept the falsely procured payroll checks and/or retain the overstated wages, or both, for their own use and benefit and for the benefit of the enterprise including, without limitation, using said monies to improve their own real properties and/or to acquire other real properties for their benefit.

51.    Plaintiff is informed and believes that as a proximate result of the Defendants' conduct in carrying out the enterprise, Plaintiff has been damaged in the amount of at least $1,000,000.00.  Plaintiff will seek leave of court to state the true amount of its damages once ascertained.

52.    With respect to the foregoing violations, Defendants have acted at all times with malice, oppression and fraud towards the Plaintiff, with the specific intent to commit the predicate acts described herein alleged and to participate in the enterprise.  Accordingly, Plaintiff is entitled to an award of exemplary and punitive damages in an amount according to proof.

//

**SECOND CLAIM FOR RELIEF**
**(Violation of RICO - 18 U.S.C. § 1962(d) – All Defendants)**

FIRST COMPLAINT BY CBC FRAMING, INC.

53.     Plaintiff repeats and realleges paragraphs 1 through 52 herein and makes the same a part hereof by reference.

54.     This claim seeks relief for the Defendants' activities described herein for violations of 18 U.S.C. § 1962(d) for conspiring to violate 18 U.S.C. § 1962(c).

55.     § 1962(d) of RICO provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

56.     Absent the Defendants' conspiracy and joint efforts, Defendants' fraudulent enterprise would not be successful.

57.     Defendants have violated 18 U.S.C. § 1962(d) by conspiring to violate § 18 U.S.C. § 1962(c) by agreeing amongst one another to systematically report incorrect payroll to CBC with the intention of having CBC issue payroll checks to framers who did not work on CBC projects and then retain the checks for their own use and benefit and/or to issue checks for amounts in excess of the wages actually earned by a framer and then keeping the overstated amounts for Defendants' own use and benefit.

58.     As a direct and proximate result of Defendants' predicate acts, as alleged herein, and by conspiring to violate 18 U.S.C. § 1962(c), Plaintiff has been damaged in amount presently believed to be at least $1,000,000.  Plaintiff will seek leave to state the true amount of its damages when the same have been ascertained.

59.     With respect to the foregoing violations, Defendants have acted at all times with malice, oppression and fraud towards the Plaintiff, with the specific intent to commit the predicate acts described herein alleged and to participate in the enterprise.  Accordingly, Plaintiff is entitled to an award of exemplary and punitive damages in an amount according to proof.

### THIRD CLAIM FOR RELIEF

17

**(Fraud – All Defendants)**

60. Plaintiff repeats and realleges paragraphs 1 through 59 and makes the same a part hereof by reference.

61. At all times mentioned herein, Defendants, and each of them, embarked on and participated in a scheme to deceive and defraud Plaintiff by repeatedly and continuously submitting false payroll reports to Plaintiff's corporate offices in Canoga Park, CA on a weekly basis for at least a four year period and keeping and cashing payroll checks made payable to framers based on the false payroll reports who had not performed work for CBC during the relevant time period, or by overstating the amount of a framer's wages and keeping the overstated wages for themselves after the checks were cashed by or on behalf of the framer.

62. As such, Defendants knowingly and willfully, and with the intention of deceiving CBC into believing that correct payroll reports were being submitted by the Defendants, misrepresented to the Plaintiff the identities of actual employees on CBC projects and/or the wages earned by a CBC employee in order to misstate the payroll and keep erroneously issued payroll checks for themselves, or keep the amount of overstated wages for themselves.

63. Furthermore, Defendants deliberately and with the intention of inducing CBC to issue payroll checks to framers performing work on one or more of the Defendants' side projects unrelated to CBC, submitted false payroll reports to CBC which misrepresented to CBC that framers were working on CBC projects when, during the reported time frame, the framers were actually employed by Defendants on Defendants' side projects.

64. Plaintiff's reliance on the Defendants' misrepresentations was justified as the Defendants, and each of them, were long time employees of CBC who were in a position of trust and confidence given their supervisory responsibilities and their duty to accurately report

weekly payroll to CBC.  Furthermore, CBC had no reason to doubt the accuracy of the payroll reports received from the Defendants.

65.     In reliance on the Defendants' misrepresentations, as herein alleged, CBC was induced to and did issue hundreds of payroll checks to framers that were not working on CBC's projects and transmitted same to the Defendants who intended to retain the checks for their own use and benefit.  In further reliance on Defendants' misrepresentations in overstating the framers' wages, CBC was induced to and did issue payroll checks to framers in amounts exceeding their wages actually earned and Defendants then retained the overstated amounts for their own use and benefit.

66.     As a proximate result of Defendants' fraud and deceit, as herein alleged, Plaintiff believes that it has suffered damages in excess of $1,000,000.00.  Plaintiff will seek leave of court to state the true amount of its damages when the same has been ascertained.

67.     Additionally, the Defendants' conduct was fraudulent, malicious and oppressive and done in conscious disregard of Plaintiff's legal rights entitling Plaintiff to exemplary and punitive damages against the Defendants in an amount to be ascertained.

**FOURTH CLAIM FOR RELIEF**
**(Conversion – All Defendants)**

68.     Plaintiff repeats and realleges paragraphs 1 through 67 herein and makes the same a part hereof by reference.

69.     As a result of the foregoing acts and/or omissions alleged herein, Defendants, and each of them, have converted Plaintiff's payroll funds to their own use and benefit.

70.     Furthermore, by pilfering materials from CBC's projects and incorporating same into Defendants' side projects, Defendants have converted lumber and other framing materials belonging to CBC to Defendants' own use and benefit.

**FIRST COMPLAINT BY CBC FRAMING, INC.**

71.     As a proximate result of the conversion of Plaintiff's property, as herein alleged,

Plaintiff has been damaged in the sum of at least $1,000,000.00 plus interest thereon at the

maximum rate allowed by law.

72.     In committing the acts described herein, Defendants were guilty of oppression,

fraud, and malice.  Furthermore, Defendants were acting in conscious disregard of Plaintiff's

legal rights.  As a result, plaintiff is entitled to an award of exemplary or punitive damages in

amount according to proof.

### FIFTH CLAIM FOR RELIEF
#### (Breach of Fiduciary Duty – All Defendants)

73.     Plaintiff repeats and realleges paragraphs 1 through 72 herein and makes the same

a part hereof by reference.

74.     At all times herein mentioned, Defendants and each of them, were employees of

Plaintiff CBC.  Defendants were in a position of trust and confidence with respect to the Plaintiff

in that Plaintiff relied on Defendants to supervise and oversee the the activities of other

employees working on CBC projects and, in particular, keep track of the framers working on the

projects and to accurately report the framers' payroll information to Plaintiff on a weekly basis in

order for Plaintiff to correctly issue payroll checks to its employees.

75.     As such, Defendants and each of them were in a position of confidence and trust

with respect to the Plaintiff and Defendants owed Plaintiff a fiduciary duty to carry out their

employment responsibilities in an honest manner and in Plaintiff's best interests.

76.     Defendants, and each of them, breached their fiduciary duties to Plaintiff by

repeatedly, continuously and deliberately misreporting payroll information to Plaintiff, and/or

aided and abetted their fellow co-defendants in misrepresenting payroll information to CBC, as

herein alleged, in order to induce Plaintiff to either issue payroll checks in the names of framers

1  who were not then employed by CBC, and to retain the erroneous payments for Defendants'

2  exclusive use and benefit, or to issue payroll checks to framers in inflated amounts, and then

3  retain the overstated amounts for Defendants' exclusive use and benefit.

4

5       77.    Furthermore, Defendants Mike Flores, Ruben Flores, Efren Morales and Ruben

6  Morales, and each of them, breached their fiduciary duties to Plaintiff by converting lumber and

7  other framing materials belonging to CBC in order to incorporate those items into Defendants'

8  side projects.

9       78.    As a proximate result of Defendants' breach of fiduciary duty, as herein alleged,

10  Plaintiff has been damaged in excess of $1,000,000.00. Plaintiff will seek leave of court to state

11

12  the true amount of its damages when the same has been ascertained.

13       79.    In committing the acts described herein, Defendants were guilty of oppression,

14  fraud, and malice. Furthermore, Defendants were acting in conscious disregard of Plaintiff's

15

16  legal rights. As a result, plaintiff is entitled to an award of exemplary or punitive damages in

17  amount according to proof.

18              **SIXTH CLAIM FOR RELIEF**
            **(Imposition of Constructive Trust – All Defendants)**
19

20       80.    Plaintiff repeats and realleges paragraphs 1 through 79 herein and makes the same

21  a part hereof by reference.

22       81.    Plaintiff is informed and believes, and thereon alleges, that Defendants used the

23  proceeds of the fraudulently procured payroll funds to acquire, improve, remodel, and or pay the

24

25  mortgages on the following real properties:

26              a.   9102 S. Temple Creek Rd., Escalon, CA 95320 (owned by Mike A. Flores

27                   and his wife, Ann S. Flores);

28              b.   1933 Bradford Street, Stockton, CA 95205 (owned by Mike A. Flores);

c.   1058 Klemeyer Circle, Stockton, CA 95206 (owned by Mike A. Flores and his wife, Ann S. Flores);

d.   5555 Meadow Brook Way, Marysville, CA 95901 (owned by Ruben Flores);

e.   2131 Huron Drive, Concord, CA (owned by Efren Morales);

f.   110 Marys Ave., Bay Point, CA 94565 (owned by Raul Morales); and

g.   891 Stonegate Circle, Oakley, CA (owned by Raul Morales).

82.   Plaintiff is informed and believes, and thereon alleges, that Defendants have acquired, improved, remodeled and/or paid the mortgages for other real properties with the funds that they have fraudulently procured or converted from Plaintiff, however, Plaintiff is unaware of the identity of said properties at this time.

83.   As a result of the fraudulent acts by Defendants, as herein alleged, Defendants hold the subject properties described above in constructive trust for Plaintiff's benefit.

### SEVENTH CLAIM FOR RELIEF
#### (Accounting – All Defendants)

84.   Plaintiff repeats and realleges paragraphs 1 through 83 herein and makes the same a part hereof by reference.

85.   Defendants are in possession, custody and control of financial records indicating the payroll checks received by them in the names of framers who did not perform work for CBC and/or for whom checks were issued in overstated amounts based on Defendants' fraudulent misrepresentations as alleged herein.

86.   Without said records, Plaintiff will not be able to fully and accurately account for all of the payroll funds erroneously issued as a result of Defendants' fraudulent

misrepresentations.  Accordingly, Plaintiff is entitled to a full and complete accounting from Defendants for all such payroll submittals.

WHEREFORE, Plaintiff pray for judgment against the Defendants as follows:

1.      Compensatory damages on Plaintiff's first through fifth claims for relief in an amount to be determined at trial;

2.      Treble damages on Plaintiff's RICO claims;

3.      Attorney's fees on Plaintiff's RICO claims;

4.      For interest on Plaintiff's compensatory damages in the maximum rate allowed by law;

5.      For exemplary and punitive damages on all of Plaintiff's first through fifth claims for relief;

6.      A constructive trust in favor of Plaintiff with respect to all property of and ownership interest in the properties of Defendants in which Defendants invested their ill gotten gains by using Plaintiff's payroll funds;

7.      For an accounting of all payroll transactions reported by Defendants;

8.      For costs of suit incurred by Plaintiff;

9.      For such other and further relief as the Court deems just and proper.

DATED: June 9, 2008                    SPECIALE & BURTON, A P.C.


                                       By: _____
                                           STEVEN E. BURTON
                                           Attorney for Plaintiff CBC
                                           FRAMING, INC.

FIRST COMPLAINT BY CBC FRAMING, INC.

1
2
3

## DEMAND FOR JURY TRIAL

4

Plaintiff hereby demands a trial by jury pursuant to Rule 38(a) of the Federal Rules of

5
6

Civil Procedure.

7

DATED: June 9, 2008                               SPECIALE & BURTON, A P.C.

8
9
10

By: _____

11

STEVEN E. BURTON
Attorney for Plaintiff CBC
FRAMING, INC.

12
13
14
15

first amended complaint

16
17
18
19
20
21
22
23
24
25
26
27
28

24

CBC FRAMING, INC., V. MICHAEL
A. FLORES ET AL.                    CASE NO. CV08-00150 MMM (JCX)

**PROOF OF SERVICE**
1013A (3) CCP Revised 1/1/88

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action, my business address is 21300 Victory Blvd., Suite 820, Woodland Hills, California 91367.

      On **June 13, 2008**, I served the foregoing document described as **FIRST AMENDED COMPLAINT** on interested parties in this action

**XX**   by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:

**XX**      I caused such envelope to be deposited in the mail at Woodland Hills, California. The envelope was mailed **first class mail** with postage thereon fully prepaid.

      I am "readily familiar" with firm's practice of collection and processing correspondence for mailing.  It is deposited with U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

      Executed on **June 13, 2008** at Woodland Hills, California.

__      BY PERSONAL SERVICE - I delivered such envelope by hand to the offices of the addressee.  Executed on          , 2005, at Woodland Hills, California.
__      (VIA FAX)     On _____, 2005, at _____(AM/PM), I caused a facsimile machine transmission from the facsimile machine telephone of (818)884-0806 of the documents identified above to the following facsimile machine telephone numbers:

      Executed on _____, at Woodland Hills, California.

**XX**     (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.
      (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

MICHELE SPECIALE                    _Michele Speciale_
TYPE OR PRINT NAME                  SIGNATURE

CBC FRAMING, INC., V. MICHAEL
A. FLORES ET AL.          CASE NO. CV08-00150 MMM (JCX)

## SERVICE LIST

| | |
|---|---|
| David J. Cohen Esq.<br>COHEN & PAIK, LLP<br>300 Montgomery Street, Ste. 660<br>Sand Francisco, CA 94104<br><br>Telephone No. (415) 398-3900<br>Facsimile No. (415) 398-7500<br><br>Attorney for Defendant Michael A. Flores | Daniel A. Flores, Esq.<br>Flores Law Firm<br>785 Mark Street, Suite 1120<br>San Francisco, CA 94103<br><br>Telephone No. (415) 240-4306<br>Facsimile No. (415) 618-0073<br><br>Attorney for Defendant Efren Morales |
| Michael A. Okler, Esq.<br>Law Offices of Michael A. Okler<br>1400 North Dutton Avenue, Suite 21<br>Santa Rosa, CA 95401<br><br>Telephone No. (707) 525-0220<br>Facsimile No. (707) 526-5864<br><br>Attorney for Defendant Ruben Flores | John V. Mejia, Esq.<br>Law Offices of John V. Mejia<br>50 California Street, Suite 1500<br>San Francisco, CA 94111<br><br>Telephone No. (415) 439-5391<br>Facsimile No. (415) 449-3543<br><br>Attorney for Defendant Francisco Badillo |
| Oliver R. Gutierrez, Esq.<br>Law offices of Oliver R. Gutierrez<br>345 Lorton Avenue, Suite 302<br>Burlingame, CA 94010<br><br>Telephone No. (650) 483-4771<br>Facsimile No. (650) 648-0454<br><br>Attorney for Defendant Raul Morales | Richard A. Tamor, Esq.<br>Tamor & Tamor<br>1901 Harrison Street, 9th Floor<br>Oakland, CA 94612<br><br>Telephone No. (510) 874-4170<br>Facsimile No. (510) 874-4174<br><br>Attorney for Defendant Quintin Badillo |

2