1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11

12   CBC FRAMING, INC., a California        )   CASE NO. CV 08-00150 MMM (JCx)
     corporation,                           )
13                                          )
                     Plaintiff,             )
14                                          )   ORDER DENYING DEFENDANTS'
        vs.                                 )   MOTION TO DISMISS FIRST AMENDED
15                                          )   COMPLAINT
     MICHAEL A. FLORES, aka MIKE            )
16   FLORES, RUBEN FLORES, RAUL             )
     MORALES, aka RAUL MORALES              )
17   OLVERA, EFREN MORALES, aka EFREN       )
     MORALES OLVERA, FRANCISCO              )
18   BADILLO, aka FRANCISCO BADILLO         )
     VASQUEZ, and QUINTIN BADILLO, aka      )
19   QUINTIN BADILLO VASQUEZ,               )
                                            )
20                   Defendants.            )
                                            )
21   _____)

22          On January 10, 2008, CBC Framing, Inc. filed this action against Michael A. Flores, Ruben

23   Flores, Raul Morales, Efren Morales, Francisco Badillo, and Quintin Badillo.  CBC, a licensed framing

24   contractor located in Canoga Park, alleges that defendants, who were foremen and superintendents,

25   engaged in schemes to defraud it so as to embezzle CBC's payroll for defendants' use.  CBC asserts

26   claims for, *inter alia*, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"),

27   fraud, and conversion.

28          On March 20, 2008, defendants filed a motion to dismiss plaintiff's complaint for improper

venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure, failure to state a RICO claim under Rule 12(b)(6), lack of subject matter jurisdiction under Rule 12(b)(1), and failure to state a fraud claim under Rule 9(b).  On May 19, 2008, the court granted defendants' motion in part.  Although concluding that venue was proper in this district, the court held that CBC had failed to state a cognizable RICO claim, and granted plaintiff twenty days' leave to amend its complaint.

On June 13, 2008, CBC filed a first amended complaint, which asserted RICO claims and related state law causes of action.  On June 30, 2008, defendants filed a motion to dismiss the first amended complaint.  As in their earlier motion, defendants argue that CBC has failed adequately to state a RICO claim.

## I.  FACTUAL BACKGROUND

### A.    The Parties

CBC is a California corporation with its principal place of business in Canoga Park, which is located in Los Angeles County.[1]  Defendant Michael Flores resides in Escalon, located in San Joaquin County,[2] while Ruben Flores resides in Marysville, located in Yuba County.[3]  Raul Morales lives in Bay Point, in Contra Costa County,[4] and Efren Morales resides in Concord, in Contra Costa County.[5]  Both Francisco Badillo and Quintin Badillo live in Stockton, which is located in San Joaquin County.[6]

---

[1]First Amended Complaint, ¶ 4.

[2]*Id.*, ¶ 5.

[3]*Id.*, ¶ 6.

[4]*Id.*, ¶ 7.

[5]*Id.*, ¶ 8.

[6]*Id.*, ¶¶ 9, 10.

### B.     Plaintiff's Business

As noted, CBC is a licensed framing contractor; it processes its payroll and issues payroll checks from its Canoga Park office.[7]  As part of its business, CBC employs crews of carpenters and other workers ("framers") to construct residential housing, apartment, condominium, and town home projects throughout California.[8]  Plaintiff's crews vary in size depending on the size of the project, the time for completion, the number of phases, and other factors.[9]  The size of the crews also varies over the life of a particular project due to personnel changes, reassignment of framers to another project, or the need to lay off framers when there is insufficient work to keep them occupied.[10]  At any given time during the relevant period, CBC had 800 to 2,500 framers working on multiple projects at various locations throughout the state; in toto, approximately 8,000 to 10,000 different framers were employed.[11]

CBC crews are typically supervised in the field by a job foreman, who is responsible for overseeing the crew's day-to-day work at a particular project.[12]  In general, it is the responsibility of each project foreman to hire and fire members of his crew, subject to the approval of a general superintendent.[13]  CBC hires general superintendents who oversee six to eight projects at a time and directly supervise the job foremen.[14]  It is the responsibility of the general superintendent to hire and fire the job foreman.[15]  The general superintendents report to CBC's president and/or vice-president at the

---

[7]*Id.*, ¶ 13.

[8]*Id.*, ¶ 14.

[9]*Id.*

[10]*Id.*

[11]*Id.*, ¶ 18.

[12]*Id.*, ¶ 15.

[13]*Id.*

[14]*Id.*, ¶ 16.

[15]*Id.*

corporate office in Canoga Park.[16]

CBC pays its foremen and framers on a weekly basis for work performed and reported by the project foremen to CBC for the prior week.[17]  The project foremen are charged with keeping track of the individual framers on their projects, and accounting for the work performed by each.[18] At the end of each work week, each project foreman prepares a written payroll report that includes the names of the framers and the foreman who worked on the project that week and all required payroll information; the foreman transmits the payroll sheet via facsimile to CBC's office in Canoga Park.[19]

CBC's payroll department issues payroll checks to the framers and foremen based on the payroll sheets.[20]  The accuracy of the payroll depends on accurate reporting of work performed by the framers on each project by the project's foreman.[21]  Ordinarily, the checks are sent via overnight courier service to CBC's facility in Stockton; at that point, the general superintendents have the checks delivered to the job sites, or project foremen pick them up and take them to the job site.[22]  In either case, the foremen pass the checks out to each payee at the job site.[23]

C.      **Allegations Concerning Defendants' Relationship and Actions**

Defendants Mike Flores and Ruben Flores are brothers.[24]  Defendants Raul Morales and Efren

---

[16]*Id.*, ¶ 17.

[17]*Id.*, ¶ 19.

[18]*Id.*

[19]*Id.*

[20]*Id.*, ¶ 20.

[21]*Id.*, ¶ 22.

[22]*Id.*

[23]*Id.*, ¶ 21.

[24]*Id.*, ¶ 27.

4

1   Morales are brothers.[25]  Defendants Francisco Vasquez and Quintin Vasquez are twin brothers.[26]  Mike

2   Flores and Efren Morales are close friends.[27]

3          During the relevant time period, Michael Flores was a general superintendent who supervised

4   multiple CBC projects.[28]  Defendant Ruben Flores was employed by CBC as a foreman on the following

5   CBC projects: Sycamore Villas and Lyon Shores in Hercules, California between July 2001 and April

6   2004; the Rose Garden project in San Ramon, California from February 2005 to March 2006; and the

7   Sycamore, Cottonwood, Magnolia, and Savanna projects in Alamo, California from January 2006 to

8   March 2007.[29]  Defendants Francisco and Quintin Vasquez were members of Ruben Flores' framing

9   crew on the Rose Garden and Alamo projects; Vasquez served as Flores' assistant foreman on the

10  projects.[30]

11         Defendant Efren Morales was employed by CBC as a foreman on the following projects:

12  Stanford Place in Pittsburg, California between May and August 2005; Teal Cove Small in Oakley,

13  California from September 2005 to December 2006; and Taylor Woodrow Creekside in San Jose,

14  California from March 2006 to May 2007.[31]  Defendant Raul Morales was employed as a foreman at the

15  following CBC projects: Stanford Place between September 2005 and July 2006; and Viento Terra

16  Serena in Milpitas, California from December 2006 to December 2007.[32]

17         CBC asserts that over the last four years, defendants associated together and engaged in various

18  schemes to defraud it by falsely reporting payroll in order to embezzle and convert CBC's funds for their

19  _____

20         [25]*Id.*

21         [26]*Id.*

22         [27]*Id.*

23         [28]*Id.*, ¶ 28.

24         [29]*Id.*, ¶ 29.

25         [30]*Id.*, ¶ 30.

26         [31]*Id.*, ¶ 31.

27         [32]*Id.*, ¶ 32.

28

own use.[33]  CBC alleges generally that:

- Defendants intentionally prepared and faxed payroll reports to its corporate office stating the names of framers who did not work on CBC projects during the time periods indicated on the payroll submission.[34]  When CBC issued payroll checks for framers listed on the payroll submission, defendants purportedly retained checks issued in the name of framers who had not worked for CBC during the relevant period, cashed them, and retained the funds for their use and benefit.[35]

- Defendants intentionally submitted payroll reports falsely overstating a framer's pay for the relevant period.[36]  Upon receipt of payroll checks issued by CBC, defendants had the overstated checks cashed by or on behalf of the individual framer to whom the check had been issued and required the framer to kick back the overstated portion of the wages to defendants.[37]  Defendants used intimidation and threats that they would deny the framer further employment to obtain the kickbacks.[38]

- Defendants oversaw projects unrelated to plaintiff's business, such as remodeling one or more of defendants' residences or construction work for third parties.[39]  Defendants hired framers employed at one time or another by CBC to do this work, and submitted payroll requests for work on the unrelated jobs to CBC's corporate office.[40]  Defendants gave the payroll checks CBC issued to the framers who worked on the side jobs,

---

[33]*Id.*, ¶ 33.

[34]*Id.*, ¶ 33(a).

[35]*Id.*

[36]*Id.*, ¶ 33(d).

[37]*Id.*

[38]*Id.*

[39]*Id.*, ¶ 33(b).

[40]*Id.*

although none of their work had been on CBC's behalf.[41]

- In addition to using their own names, defendants used aliases to submit payroll requests to CBC, to falsely report work performed on projects and to keep the payroll checks issued by CBC for the falsely reported work.[42]

- Defendants pilfered and stole lumber and other framing materials that CBC purchased for its projects, and used the materials on their side projects.[43]

More specifically, CBC asserts that:

- While working on the Hercules, Rose Garden, and Alamo projects, Ruben Flores submitted weekly payroll reports that included employees who had not worked on the projects in order to obtain CBC payroll checks for his own use.[44] Flores also submitted false reports overstating employees' wages, and required employees to kick back to him the overstated portions of their paychecks.[45]

- While working with Ruben Flores on the Rose Garden and Alamo projects, Francisco Vasquez (who served as Flores' assistant foreman) and Quintin Vasquez (who was a carpenter on Flores' framing crew) assisted Flores' submission of false pay reports by identifying CBC employees for whom the false payroll reports could be submitted.[46] The Vasquezes also helped Flores by cashing the fraudulently obtained paychecks and giving the cash either to Mike or Ruben Flores.[47]

- During the course of the Rose Garden project, Mike and Ruben Flores undertook a side

---

[41]*Id.*

[42]*Id.*, ¶ 33(e).

[43]*Id.*, ¶ 33(c).

[44]*Id.*, ¶ 34.

[45]*Id.*

[46]*Id.*, ¶ 35.

[47]*Id.*

project on a home in Blackhawk, California.[48]  From July to August 2005, the Floreses employed CBC employees to work on this side project and submitted payroll reports for the employees to CBC.[49]

- From September 2005 to December 2007, Efren Morales remodeled a single family residence he owned in Concord, California, using employees and materials from CBC's Creekside project.[50]  Morales then submitted false payroll reports to CBC for the labor of at least four CBC employees who worked on his home.[51]  Morales undertook the remodel with the knowledge, authorization, and consent of Mike Flores.[52]

- While working on the Stanford Place, Teal Cove, and Creekside projects, Efren Morales submitted false payroll reports on a weekly basis, seeking payment for employees who had not, in fact, worked on the projects during the periods reflected.[53]  Morales did so with the knowledge, authorization, and consent of Mike Flores, and shared the cash from the fraudulently obtained paychecks with Flores.[54]

- In late 2006, Mike Flores directed a project foreman (not a defendant in this action) at the Teal Cove project to submit payroll reports for employees who had not worked on that project.[55]

- While working on the Creekside project in February 2007, Mike Flores engaged in a side project, which involved framing a house in Sunnyvale, California, using CBC

---

[48]*Id.*, ¶ 36.

[49]*Id.*

[50]*Id.*, ¶ 37.

[51]*Id.*

[52]*Id.*

[53]*Id.*, ¶ 38.

[54]*Id.*

[55]*Id.*, ¶ 39.

employees.[56]  Flores had Efren Morales falsely report payroll for those employees to CBC as if they had worked on the Creekside project.[57]

• A CBC employee was injured while working on Mike Flores' Sunnyvale side project.[58] Flores, with the assistance and cooperation of Ruben Flores and Efren Morales, reported to CBC that this worker had been injured on the Alamo project in order to claim worker's compensation benefits for him.[59]  Additionally, defendants received fraudulent paychecks for the employee for work done on the Creekside project and kept the funds for themselves, refusing to pay the worker his labor on Flores' side project.[60]

• While working on the Stanford Place and Terra Serena projects between September 2005 and December 2007, Raul Morales engaged in side projects in Bay Point, Oakley, and Antioch, California with Mike Flores' knowledge and assistance.[61]  Morales submitted payroll reports for at least six CBC employees covering time they worked on his side projects.[62]  Morales also pilfered materials from CBC's Teal Cove and Stanford Place projects for use on his side projects in Oakley, Bay Point, and Antioch.[63]

• While working on the Stanford Place and Terra Serena projects, Raul Morales submitted weekly payroll reports for employees who had not worked on those projects, and submitted payroll reports falsely overstating employees' wages.[64]  Morales did so with

---

[56]*Id.*, ¶ 40.

[57]*Id.*

[58]*Id.*, ¶ 41.

[59]*Id.*

[60]*Id.*

[61]*Id.*, ¶ 42.

[62]*Id.*

[63]*Id.*, ¶ 43.

[64]*Id.*, ¶ 44.

1    Mike Flores' knowledge, authorization, and consent.[65]

2    **D.    Plaintiff's Claims**

3    CBC commenced this action on January 10, 2008, and filed its first amended complaint on June

4    13, 2008.  CBC pleads claims for violation 18 U.S.C. §§ 1962(c) and (d) of RICO, fraud; conversion;

5    breach of fiduciary duty; imposition of a constructive trust; and an accounting.[66]  It seeks compensatory

6    damages; treble damages on the RICO claims; attorney's fees on the RICO claims; punitive damages;

7    imposition of a constructive trust; an accounting of all payroll transactions reported by defendants; costs;

8    and interest.

9

10    **II.  DISCUSSION**

11    **A.    Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6)**

12    A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.  A

13    Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the

14    absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*,

15    901 F.2d 696, 699 (9th Cir. 1988).  In deciding a Rule 12(b)(6) motion, the court generally looks only

16    to the face of the complaint and documents attached thereto.  *Van Buskirk v. Cable News Network, Inc.*,

17    284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d

18    1542, 1555 n. 19 (9th Cir. 1990).

19    The court must accept all factual allegations pleaded in the complaint as true, and construe them

20    and draw all reasonable inferences from them in favor of the nonmoving party.  *Cahill v. Liberty Mutual*

21    *Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).  It need

22    not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of

23    factual allegations.  See *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) ("While a

24    complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

25    plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels

26    _____

27    [65]*Id.*

28    [66]*Id.*, ¶¶ 23-86.

10

1  and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual

2  allegations must be enough to raise a right to relief above the speculative level, on the assumption that

3  all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)).

4  **B.    Substantive Elements of a RICO Claim**

5  To state a RICO claim, plaintiff must allege that defendants (a) received income derived from

6  a pattern of racketeering activity, and used the income to acquire or invest in an enterprise in interstate

7  commerce; (b) that they acquired or maintained an interest in, or control of, an enterprise engaged in

8  interstate commerce through a pattern of racketeering activity; (c) that they caused an enterprise engaged

9  in interstate commerce, while employed by the enterprise, to conduct or participate in a pattern of

10  racketeering activity; or (d) that they conspired to engage in any of these activities.  18 U.S.C. § 1962;

11  see also *United States v. Turkette*, 452 U.S. 576, 582 (1981) ("In order to [prevail] under RICO, [a party]

12  must prove both the existence of an 'enterprise' and the connected 'pattern of racketeering activity.'

13  The enterprise is an entity. . . .  The pattern of racketeering activity is, on the other hand, a series of

14  criminal acts as defined by the statute"); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1481 (9th Cir. 1997)

15  (plaintiff must allege "(1) the conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering

16  activity").

17  Racketeering activity is any act indictable under 18 U.S.C. § 1961.  *Forsyth*, 114 F.3d at 1481.

18  Predicate acts of racketeering activity are "any act or threat involving murder, kidnapping, gambling,

19  arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or

20  listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable

21  under State law and punishable by imprisonment for more than one year," and "any act which is

22  indictable" under various provisions of Title 18 of the Unites States Code, including section 1503

23  (obstruction of justice), section 1510 (obstruction of criminal investigations), section 1511

24  (obstruction of state or local law enforcement), section 1512 (tampering with a witness, victim, or

25  an informant), and section 1513 (retaliation against a witness, victim, or informant).  18 U.S.C. §

26  1961(1).

27  A "pattern" requires the commission of at least two acts of "racketeering activity" within a

28

11

1   ten-year period.   18 U.S.C. § 1961(5).   An "enterprise" includes "any individual, partnership,

2   corporation, association, or other legal entity, and any union or group of individuals associated in fact

3   although not a legal entity." 18 U.S.C. § 1961(4).

4       Plaintiff must plead that defendants' violation was both the "but for" and proximate cause of a

5   concrete financial injury.   *Resolution Trust Co. v. Keating*, 186 F.3d 1110, 1117 (9th Cir. 1999);

6   *Forsyth*, 114 F.3d at 1481 (citing *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1311 (9th Cir.

7   1992), cert. denied, 507 U.S. 1004 (1993)).

8      **C.**    **Whether Plaintiff's First Amended Complaint Alleges the Existence of an**

9            **Enterprise**

10       As in their earlier motion, defendants argue that CBC's RICO claims must be dismissed because

11   the first amended complaint fails adequately to plead an "enterprise."   The first amended complaint

12   alleges that defendants

13       "Mike Flores, Ruben Flores, Raul Morales, Efren Morales, Francisco Vasquez and

14       Quintin Vasquez each associated together for the common purpose to form an enterprise

15       within the meaning of 18 U.S.C. [§] 1961(4) which devised a multi-faceted scheme

16       whereby Defendants, and each of them, using their positions of trust and confidence in

17       the employ of Plaintiff, and with the deliberate intention and common purpose to defraud

18       CBC by, *inter alia*, falsely reporting payroll to CBC in order to embezzle and convert

19       CBC's funds for the Defendants' own use and benefit.   During the times mentioned

20       herein, the enterprise was an ongoing enterprise which engaged in and whose activities

21       affected interstate commerce.   The Defendants' participation in the enterprise was

22       necessary for the successful operation of the Defendants' scheme."[67]

23       "'[I]t is essential to plead precisely in a RICO case the enterprise alleged and the RICO section

24   allegedly violated.'"   *Johnson v. JP Morgan Chase Bank*, CV 08-0081 LJO SMS, 2008 WL 1925026,

25   *4 (E.D. Cal. Apr. 29, 2008) (*Johnson I*) (quoting *Reynolds v. East Dyer Development Co.*, 882 F.2d

26   1249, 1251 (7th Cir. 1989)).   CBC pleads RICO claims under 18 U.S.C. §§ 1962(c) and (d).   Section

27

28       [67]First Amended Complaint, ¶ 33.

1962(c) provides:

> "It shall be unlawful for any person employed by or associated with any enterprise
> engaged in, or the activities of which affect interstate commerce, to conduct or
> participate, directly or indirectly, in the conduct of such enterprise's affairs through
> a pattern of racketeering activity." 18 U.S.C. § 1962(c).

Section 1962(d) provides:

> "It shall be unlawful for any person to conspire to violate any of the provisions of
> subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

CBC's § 1962(d) claim alleges a conspiracy to violate § 1962(c).[68]

Under § 1961(4), an "enterprise" can be "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." As the court noted in *Johnson I*, "'[t]he "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages.'" *Johnson I*, 2008 WL 1925026 at *4 (quoting *Turkette*, 452 U.S. at 583).

An "associated-in-fact enterprise 'is a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (en banc) (quoting *Turkette*, 452 U.S. at 583); see *Johnson I*, 2008 WL 1925026 at *4 ("'The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct,'" quoting *Turkette*, 452 U.S. at 583). An "associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise." *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc).[69] "To establish the existence of an associated-in-fact enterprise, a plaintiff must allege (1) persons associated for the 'common purpose of engaging in a course of conduct,' (2) 'an ongoing organization, formal or informal,' and (3) that the

---

[68]*Id.*, ¶ 54.

[69]In *Odom*, the Ninth Circuit overruled its prior requirement that an alleged associated-in-fact enterprise have a sufficiently "ascertainable structure, separate and apart from the structure inherent in the conduct of the pattern of racketeering activity." See *Chang v. Chen*, 80 F.3d 1293, 1295 (9th Cir. 1996)).

1  associates functioned as a 'continuing unit.'"  *Three Rivers Provider Network, Inc. v. Meritain Health,*

2  *Inc.*, CV 07-1900 WQH (BLM), 2008 WL 2872664, *14 (S.D. Cal. July 23, 2008) (quoting *Odom*, 486

3  F.3d at 552).

4         Defendants argue that CBC has failed to allege an associated-in-fact enterprise because  it has

5  failed to allege facts demonstrating that the enterprise "had an existence distinct from the pattern of

6  racketeering activity allegedly engaged in by defendants, was ongoing, had a common purpose, had a

7  structure, had a system of decision making authority, or was comprised of a membership of various

8  associates functioning as a single unit."[70]

9              **1.    Common Purpose**

10        CBC alleges that the defendants associated together to defraud CBC by, *inter alia*, falsely

11  reporting payroll to CBC in order to embezzle and convert CBC's funds for their own use and benefit.[71]

12  It further asserts that the various defendants are brothers and/or close friends, and that they worked

13  together either as foremen, assistant foremen, or members of a particular foreman's framing crew.[72] The

14  specific allegations regarding defendants' conduct indicate that many of the criminal acts undertaken

15  were done with the assistance and consent of other defendants.[73]

16        These allegations stand in contrast to the allegations of CBC's initial complaint, which simply

17  stated that "[t]he following persons, and others presently unknown, have been and are members of and

18  constitute an 'enterprise' within the meaning of RICO: (a) Mike Flores; (b) Ruben Flores; (c) Raul

19  Morales; (d) Efren Morales; (e) Francisco Vasquez; and (f) Quintin Vasquez."[74]  The court found this

20  allegation insufficient because it did not state that defendants were associated "for a common purpose,"

21  did not discuss "evidence of an ongoing organization, formal or informal," and did not allege that the

22

23        [70]Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss Action

24  Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 9(b) ("Def.'s Mem.") at 6.

25        [71]First Amended Complaint, ¶ 33.

26        [72]*Id.*, ¶¶ 27-30.

27        [73]See, e.g., *id.*, ¶¶ 35-37.

28        [74]Complaint, ¶ 27.

1    "various associates function as a continuing unit."  See *Odom*, 486 F.3d at 552.[75]  Indeed, CBC did not

2    even allege that defendants knew one another, let alone that they had any kind of common purpose,

3    organization or function.  Additionally, based on the allegations, it appeared that defendants' purported

4    fraudulent activity could have been committed by a single project foreman without the knowledge or

5    assistance of the others.

6         The first amended complaint corrects these deficiencies by alleging that defendants knew one

7    another or were related, worked together on CBC projects, and associated as a group for the purpose of

8    defrauding CBC through the submission of false payroll reports, among other criminal activities.[76]  The

9    court concludes that these allegations sufficiently allege that defendants associated together for the

10   common purpose of defrauding CBC.  Cf. *Three Rivers Provider Network, Inc.*,  2008 WL 2872664 at

11   *14 ("Plaintiff alleges that Defendants Meritain, Calarco, Coffey, in conjunction with nonparties CBSA

12   and other clients and vendors of Meritain, associated together to defraud Plaintiff out of fees and convert

13   Plaintiff's network of discounts. Plaintiff further alleges that Defendants benefitted from their

14   participation in the scheme to Plaintiff's detriment. The Court concludes that these allegations

15   sufficiently allege Defendants associated together for the common purpose of defrauding Plaintiff,"

16   citing *Odom*, 486 F.3d at 552); *Johnson v. JP Morgan Chase Bank*, CV F 08-0081 LJO SMS, 2008 WL

17   2682579, *8 (E.D. Cal. June 30, 2008) (*Johnson II*) ("Here, Ms. Johnson alleges that BAG acted with

18   the other defendants for the common purpose 'to obscure that the debt was a result of fraudulent

19   transactions not involving Plaintiff and . . . to support a request for a default judgment against Plaintiff.

20   . . . Viewed in a light most favorable to Ms. Johnson, this Court finds that Ms. Johnson alleges properly

---

22      [75]The complaint alleged in conclusory terms that "the enterprise was an ongoing enterprise which

23   engaged in and whose activities affected interstate commerce."  (*Id.*, ¶ 28).

24      [76]Defendants argue that CBC's allegation of common purpose is tautological because the first
     amended complaint states that defendants "associated together for the common purpose to form an

25   enterprise within the meaning of 18 U.S.C. [§] 1961(4) which devised a multi-faceted scheme . . . ."
     (Def.'s Mem. at 4).  Viewing the allegations in the light most favorable to CBC, however, it is clear that

26   CBC intends to allege that defendants associated together "to defraud CBC by, *inter alia*, falsely
     reporting payroll to CBC in order to embezzle and convert CBC's funds for the Defendants' own use

27   and benefit."  (First Amended Complaint, ¶ 33).  As discussed above, this allegation satisfies the

28   common purpose requirement.

a RICO claim against BAG"); *Flores v. Emerich & Fike*, CV 05-0291 AWI DLB, 2008 WL 2489900, *23 (E.D. Cal. June 18, 2008) ("To find Plaintiffs have alleged an associated-in-fact enterprise, the court must first determine whether Plaintiffs have sufficiently alleged that Defendants associated for 'a common purpose of engaging in a course of conduct.' According to the complaint, Defendants had the common purpose of defrauding Plaintiffs and converting Plaintiffs' property for a capital infusion into Defendant Yosemite.  Defendants furthered this common purpose by creating sham corporations to perpetrate fraud, breach contracts, and convert property and assets for their own selfish gain.  Under the standard set forth in *Odom*, these allegations are adequate to allege that Defendants had a common purpose of creating sham companies that were used to convert Plaintiff's property through fraudulent means"); *Bryant v. Mattel, Inc.*, CV 04-09049 SGL, 2007 WL 5430886, *8 (C.D. Cal. June 27, 2007) ("Here, Mattel has alleged the common purpose of attempting to defraud Mattel and steal its trade secrets.  Mattel's many factual allegations, detailed herein, support this alleged common purpose").

### 2.    Ongoing Organization

"An ongoing organization is 'a vehicle for the commission of two or more predicate crimes.'" *Odom*, 486 F.3d at 552 (citing *United States v. Cagnina*, 697 F.2d 915, 921-22 (11th Cir. 1983)).  The first amended complaint alleges, for instance, that while working together on the Rose Garden project from February 2005 to March 2006 and on the Alamo projects from January 2006 to March 2007, Ruben Flores and Francisco and Quintin Vasquez collaborated to submit false payroll reports to CBC.[77]  While working on the Rose Garden project in July and August 2005, Ruben and Mike Flores engaged in a side project on a home in Blackhawk, CA, and submitted payroll reports to CBC for employees working on the unauthorized project.[78]  From September 2005 to December 2007, Efren Morales and Mike Flores worked together to remodel a residence owned by Morales in Concord, California using CBC employees as laborers and submitting false payroll reports to CBC.[79]  Additionally, from September 2005 to December 2007, Mike and Ruben Flores engaged in various side projects, during which they pilfered

[77]First Amended Complaint, ¶ 35.

[78]*Id.*, ¶ 36.

[79]*Id.*, ¶ 37.

16

1    materials and submitted false payroll reports to CBC.[80]

2    Because CBC alleges that defendants' organization functioned for the commission of at least two

3    predicate crimes of wire and/or mail fraud – e.g., the submission of multiple false payroll reports – and

4    alleges several other predicate crimes as well, CBC has sufficiently pled the ongoing organization

5    element.  Cf. *Three Rivers Provider Network, Inc.*, 2008 WL 2872664 at *14 ("Plaintiff alleges that

6    Defendant Meritain intentionally omitted Plaintiff's name from EOBs with the intent to defraud

7    Plaintiff, and further, that Meritain intentionally underpaid Plaintiff fees owed to Plaintiff, and

8    intentionally overcharged Plaintiff for administrative fees.  Plaintiff alleges that Defendant Calarco

9    participated in the enterprise by assisting in the creation of the false EOBs and by inducing Plaintiff into

10   sending Meritain Plaintiff's rates and continuing to allow Meritain access to Plaintiff's network of

11   discounts.  Plaintiff alleges that Defendant Coffey created false EOBs and assisted in Meritain's

12   acquisition of CBSA.  The Court concludes that these allegations sufficiently allege an ongoing

13   organization created to commit and facilitate at least two predicate acts"); *Johnson II*, 2008 WL

14   2682579 at *8 ("Ms. Johnson alleges that BAG acted with the other defendants to effect 'a series of

15   sales and assignments' which acted to obscure the debt.  These events, if true, allege with specificity

16   BAG's involvement in an ongoing organization"); *Flores*, 2008 WL 2489900 at *23 ("According to

17   Plaintiffs, Defendants worked over many years to use sham corporations to defraud and convert assets

18   for the benefit of Defendant Yosemite and Defendants.  Whether the complaint sufficiently alleges two

19   or more predicate crimes is discussed below.  However, for the purposes of the enterprise requirement,

20   the complaint sufficiently alleges an ongoing organization"); *Bryant*, 2007 WL 5430886 at *8 ("Here,

21   plaintiffs have alleged that the counter-defendants coordinated their many efforts at depriving Mattel

22   of its proprietary information and its intellectual property.  The allegations regarding common use of

23   the 'plot04@aol.com' email address to transfer confidential Mattel information to MGA support the

24   finding of an 'ongoing organization.'  So, too, do the allegations regarding the repeated communications

25   between Bryant and MGA").

26

27

28   [80]*Id.*, ¶ 42.

17

### 3.    Continuing Unit

"*Odom* and *Turkette* require that a properly pled enterprise include allegations that 'the various associates function as a continuing unit.'" *Three Rivers Provider Network, Inc.*, 2008 WL 2872664 at *14 (quoting , 486 F.3d at 552). "The continuity requirement does not require that every member of the enterprise be involved in each of the underlying acts of racketeering." *Id.* (citing *Odom*, 486 F.3d at 552). "'Instead, the continuity requirement focuses on whether the associates' behavior was "ongoing" rather than isolated activity.'" *Id.* (quoting *Odom*, 486 F.3d at 553).

CBC alleges that defendants' fraudulent activities occurred on a weekly basis throughout a period that spanned several years.[81]  This suffices to satisfy the continuing unit pleading requirement. Cf. *id.* at *15 ("Plaintiffs allege that the enterprise's activity (including creating fraudulent EOBs, inducing Plaintiff to continue working with Meritain after questions of improper access first arose, and Meritain's acquiring of CBSA to assist with the scheme) began in and around 2004 and continues today. As noted in *Odom*, a two-year span 'is far more than adequate' to establish a continuing unit. *Odom*, 486 F.3d at 553.  Accordingly, the Court concludes that Plaintiffs have alleged sufficient facts to constitute the continuing unit requirement"); *Flores*, 2008 WL 2489900 at *24 ("Finally, Plaintiffs must allege facts that, if proved, provide sufficient 'evidence that the various associates function as a continuing unit.' *Turkette*, 452 U.S. at 583. Here, Plaintiffs have alleged that Defendants acts were ongoing and not an isolated activity. Defendants' alleged actions to defraud Plaintiffs and convert Plaintiffs' money allegedly happened over many years and Defendants not only committed fraud and conversion when packing Plaintiffs' fruit, Defendants allegedly continued to commit fraud and converted Plaintiffs' assets when they dissolved corporations owing money to Plaintiffs and made

---

[81]See, e.g., *id.*, ¶ 29 (stating that Ruben Flores was employed by CBC as a project foreman on the following CBC projects: Sycamore Villas and Lyon Shores in Hercules, California between July 2001 and April 2004; the Rose Garden project in San Ramon, California from February 2005 to March 2006; and the Sycamore, Cottonwood, Magnolia, and Savanna projects in Alamo, California from January 2006 to March 2007); *id.*, ¶ 34 ("During the course of the Hercules, Rose Garden and Alamo projects, Defendant Ruben Flores would submit weekly payroll reports that included the names of employees who had not worked on these projects and would receive CBC's payroll checks from CBC's weekly delivery and have those checks cashed and Defendant Ruben Flores would keep the cash from those payroll checks for himself and for the enterprise").

litigation decisions that left these corporations without funds.  The complaint alleges Defendants' RICO conduct began in 1995 and continued until June 2003.  This seven-year time span is adequate to establish that Defendants functioned as a continuing unit").

For all of these reasons, the court concludes that CBC has adequately alleged an enterprise involving each of the defendants.[82]

---

[82]Defendants argue that CBC has failed adequately to allege an association-in-fact because the association pleaded does not have an existence beyond that necessary to commit the acts charged as predicate racketeering activities.  (Defendants' Reply to Plaintiff's Opposition to Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 9(b) ("Def.'s Reply") at 2.)  Defendants appear to contend that CBC must allege that defendants associated with one another for some purpose *other than* engaging in the criminal predicate acts.  As support for this, they cite *River City Markets, Inc. v. Fleming Foods West, Inc*., 960 F.2d 1458 (9th Cir. 1992).  There, the Ninth Circuit held that the district court had dismissed various RICO counts "under the mistaken belief that *Rae v. Union Bank*, 725 F.2d 478 (9th Cir. 1984), requires that a RICO enterprise 'must be an entity separate and distinct from the defendants.'"  *Id.* at 1461.  Contrary to the district court's analysis, the appellate court stated, plaintiffs did not allege that either defendant was simultaneously a RICO enterprise and a RICO defendant.  Rather, the court observed, plaintiff had pled the existence of a RICO enterprise as follows:

> "'During the period August 1, 1984 through January 14, 1985 and thereafter, said persons [Alpha Beta and Fleming] associated together to form an enterprise within the meaning of Section 1961(4) which devised a scheme to defraud Plaintiffs and other members of the public by inducing them to purchase ALPHA BETA stores based upon false information relating to the stores' sales volume, profits, leasehold interests and other matters as described herein.'"  *Id.*

The court reasoned that "[w]hat plaintiffs allege is that Alpha Beta and Fleming associated together in a business relationship akin to a joint venture to market the grocery stores, and that it was this 'enterprise' with which each individual defendant interacted in conducting the alleged pattern of mail and wire fraud activities."  *Id.*

As noted, however, the Ninth Circuit has subsequently clarified that "an associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise." *Odom*, 486 F.3d at 551.  Citing *River City Markets*, the *Odom* court observed that earlier Ninth Circuit decisions had "equivocated on whether an associated-in-fact enterprise must have an ascertainable separate structure and, if so, what functions that structure must serve."  *Id.* at 550 (citing, e.g., *United States v. Feldman*, 853 F.2d 648, 659-60 (9th Cir. 1988) (declining to decide whether proof of ascertainable structure is necessary for an associated-in-fact enterprise because the legitimate corporations constituting the enterprise each had organizational structures); *River City Markets, Inc*., 960 F.2d at 1461 (concluding that a "business relationship akin to a joint venture" was sufficient to establish an associated-in-fact RICO enterprise); *Chang v. Chen*, 80 F.3d 1293, 1299 (9th Cir. 1996) (explaining that "it is sufficient to show that the organization has an existence beyond that which is merely necessary to commit the predicate acts of racketeering" and citing the Third Circuit's decision in [*United States v. Riccobene*, 709 F.2d 214, 224 (3d Cir. 1983)]).  To the extent these prior cases required an organizational structure or existence beyond that necessary to commit the criminal acts, the *Odom* court overruled them.  *Id.* at 551.

1

2        A pattern of racketeering activity "is proved by evidence of the requisite number of acts of

3   racketeering committed by the participants in the enterprise" – i.e., at least two acts within ten years of

4   one another. *Odom*, 486 F.3d at 549; 18 U.S.C. § 1961(5). "'A "pattern" of racketeering activity also

5   requires proof that the racketeering predicates are [1] related and [2] . . . amount to or pose a threat of

6   continued criminal activity.'" *Best Deals on TV, Inc. v. Naveed*, C 07-1610 SBA, 2007 WL 2825652,

7   *5 (N.D. Cal. Sept. 26, 2007) (quoting *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004)). "The

8   'related to' requirement is satisfied if the alleged acts 'have the same or similar purposes, results,

9

10   _____

11        Applying the Supreme Court's decision in *Turkette*, 452 U.S. at 583, the court stated that
     "[t]o require that an associated-in-fact enterprise have a structure beyond that necessary

12   to carry out its racketeering activities would be to require precisely what the Court in
     *Turkette* held that RICO does not require. Such a requirement would necessitate that the

13   enterprise have a structure to serve both illegal racketeering activities as well as
     legitimate activities. In other words, it would require – as the First Circuit sought to

14   require in *Turkette* – that the enterprise have a structure serving both illegitimate and
     legitimate purposes. But the Court in *Turkette* held precisely the opposite. It held that

15   a purely criminal enterprise can be an associated-in-fact enterprise within the meaning of
     RICO." *Id.* (citing *Cedric Kushner Promotions v. King*, 533 U.S. 158, 164-65 (2001)

16   (stating that RICO "protects the public from those who would unlawfully use an
     'enterprise' (whether legitimate or illegitimate) as a 'vehicle' through which 'unlawful

17   . . . activity is committed'")).

18        The court concluded that plaintiff had sufficiently pled the existence of an association-in-fact,
     even though the common purpose for which defendants associated was to "increas[e] the number of

19   people using Microsoft's Internet service through fraudulent means." *Id.* at 552.

20        Here, defendants appear to argue that CBC must plead precisely what the *Odom* court
     determined was unnecessary to state a RICO claim – i.e., that defendants had some common purpose

21   "other than to present fake payroll requests to CBC and steal its materials – the very pattern of
     racketeering activity alleged." (Def.'s Mem. at 4). *Odom* clearly explains, however, that an associated-

22   in-fact enterprise need not "have a structure to serve both illegal racketeering activities as well as
     legitimate activities." *Odom*, 486 F.3d at 551. "[T]he Supreme Court's statement in *Turkette* that an

23   'enterprise' is 'an entity separate and apart from the pattern of activity in which it engages' is not a
     statement that an associated-in-fact enterprise must have some kind of separate structure. Rather, it is

24   merely a statement of the obvious: The enterprise and its activity are two separate things. One is the
     enterprise. The other is its activity." *Id.* Because CBC has adequately alleged "(1) persons associated

25   for the 'common purpose of engaging in a course of conduct,' (2) 'an ongoing organization, formal or
     informal,' and (3) that the associates functioned as a 'continuing unit,'" *Three Rivers Provider Network,*

26   *Inc.*, 2008 WL 2872664 at *14, under Ninth Circuit and Supreme Court law, it has sufficiently alleged
     an enterprise for purposes of its RICO claims that is separate and distinct from the activities the

27   enterprise undertook.

28

1   participants, victims, or methods of commission, or otherwise are interrelated by distinguishing

2   characteristics and are not isolated events.'" *Id.* (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492

3   U.S. 229, 240 (1989)). "In turn, 'to satisfy the continuity requirement, [a complainant] must prove either

4   a series of related predicates extending over a substantial period of time, i.e., closed-ended continuity,

5   or past conduct that by its nature projects into the future with a threat of repetition, i.e. open-ended

6   continuity.'" *Steam Press Holdings, Inc. v. Hawaii Teamsters and Allied Workers Union, Local 996*,

7   302 F.3d 998, 1011 (9th Cir. 2002) (quoting *Howard v. America Online Inc.*, 208 F.3d 741, 750 (9th Cir.

8   2000)); see also *Naveed*, 2007 WL 2825652 at *5 ("Closed-ended continuity exists when there is 'a

9   series of related predicates extending over a substantial period of time.' . . .  Open-ended continuity

10  requires 'past conduct that by its nature projects into the future with a threat of repetition' or constitute

11  the enterprise's 'regular way of doing business,'" quoting *H.J. Inc.*, 492 U.S. at 241-42; *Allwaste, Inc.*

12  *v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995)).

13          Defendants argue that CBC has not adequately pled the relationship between acts required to

14  show a pattern of racketeering activity.[83]  They assert that CBC has simply "listed a series of isolated

15  alleged events involving the wrongdoing of each of the defendants at different times and in connection

16  with different projects."[84]  In support of this argument, defendants cite the language of the court's order

17  on their motion to dismiss the original complaint.  There, the court found that CBC had failed to allege

18  a pattern of racketeering activity because, although the alleged acts appeared to be related in the sense

19  that they were similar and directed at a single victim, none of the facts alleged in the complaint gave rise

20  to an inference that the acts were anything other than a series of isolated events.[85]  Defendants argue that

21  the first amended complaint suffers from the same deficiency.

22          CBC counters that in the first amended complaint, it has sufficiently alleged a pattern of

23  racketeering activity by identifying a "series of common threads that run throughout the relationships

24  of the defendants (personal, familial and professional) as well as a clearly defined pattern of conduct

25  _____

26  [83]Def.'s Mem. at 7-12.

27  [84]*Id.* at 8.

28  [85]*Id.*

21

1   over an extended period of time, with an identical modus operandi[,] all of which was taking place under

2   the general supervision of Mike Flores."[86]  CBC contends that, "[b]y arguing . . . these are an isolated

3   series of event[s], Defendants would have the Court believe that the foregoing was a remarkable series

4   of coincidences."[87]

5        The court agrees that CBC has sufficiently pled a pattern of racketeering activity.  First, it has

6   adequately alleged that defendants knew one another and intentionally formed an enterprise – i.e., an

7   ongoing organization for the common purpose of defrauding CBC.  There are specific allegations that

8   each of the defendants worked with others to embezzle funds from CBC and convert materials from its

9   project sites.  For instance, Francisco and Quintin Vasquez purportedly assisted Ruben Flores in

10  submitting false payroll reports to CBC for work performed on the Rose Garden and Alamo projects.[88]

11  Ruben Flores, in turn, worked with his brother, Mike Flores, on a side project in Blackhawk, California

12  and submitted false payroll reports for work performed at the unauthorized project.[89]  Ruben and Mike

13  Flores also worked together, and in connection with Efren Morales, to submit false payroll reports for

14  another side project in Sunnyvale.[90]  Efren Morales allegedly worked with Mike Flores to overstate

15  employees' wages for work performed at the Stanford Place, Teal Cove, and Creekside projects.[91]  Raul

16  Morales, for his part, purportedly used CBC labor and materials for work on side projects in Bay Point

17  and Oakley, assisted by Mike Flores.[92]

18       Although CBC does not allege that each defendant participated in each predicate act, the similar

19  nature of the acts – i.e., submitting false payroll reports, overstating wages, performing side projects,

20

21  [86]Plaintiff's Opposition to Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(1), 12(b)(6),
    and 9(b) ("Pl.'s Opp.") at 13.

22

23  [87]*Id.*

24  [88]First Amended Complaint, ¶ 35.

25  [89]*Id.*,¶ 36.

26  [90]*Id.*, ¶ 41.

27  [91]*Id.*, ¶ 38.

28  [92]*Id.*, ¶ 42.

and stealing materials – and the overlapping players, strongly suggest that the activity was interconnected. Accordingly, the court concludes that CBC has alleged a pattern of racketeering activity sufficient to withstand a motion to dismiss.[93]  Cf. *Three Rivers Provider Network, Inc.*, 2008 WL 2872664 at *13 ("After reviewing the allegations, the Court concludes that Plaintiff has adequately alleged conduct and a pattern of racketeering activity on the part of Defendants.  The Amended Complaint alleges that Defendants participated in the conduct and control of the alleged enterprise, and the Court finds that the allegations allege that Defendants committed more than two predicate acts of mail and/or wire fraud.  The Court finds that the predicate acts are pleaded with sufficiently particularity in compliance with Fed. R. Civ. P. 9(b). Though the alleged predicate acts of mail and/or wire fraud do not involve each of the Defendants in each instance, the Court finds that the allegations plausibly allege that each Defendant would have or should have known, and indeed should have expected, that the alleged acts of mail or wire fraud would occur, and thus each Defendant could plausibly be liable for each predicate act alleged," citing *United States v. Kuzniar*, 881 F.2d 466, 472 (7th Cir. 1989), and *R.F. Davis Chemical Corp. v. Nalco Chemical Corp.*, 757 F.Supp. 1499, 1512-13 (N.D. Ill. 1990)).

In sum, CBC has thus sufficiently stated a claim for violation of 18 U.S.C. § 1962(c).       **E .   Plaintiff's RICO Conspiracy Claim**

Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."  18 U.S.C. § 1962(d).  To plead a claim under § 1962(d), plaintiff must adequately plead a claim under one of §§ 1962(a), (b) or (c). See *Wagh v. Merits Direct, Inc.*, 363 F.3d 821, 831 (9th Cir. 2003).  Because CBC has sufficiently alleged a § 1962(c) claim, it has therefore also sufficiently alleged a § 1962(d) claim.  Compare *Neibel v. Trans World Assurance Co.*,

---

[93]Defendants do not appear to argue that CBC has inadequately pled close-ended continuity. The court, moreover, has determined that CBC has adequately alleged that defendants functioned as a "continuing unit" by engaging in illegal activities over a period of several years. Cf., e.g. *Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir. 1989) ("Continuity too is present: The 'related predicates extend[ed] over a substantial period of time,' here a matter of years, from 1980 until the filing of this action," citing *H.J. Inc.*, 492 U.S. at 242); *Naveed*, 2007 WL 2825652 at *5 ("In their amended complaint, the plaintiffs allege a pattern of racketeering activity beginning in 2005 and continuing until April 2007.  Hence, as alleged by the plaintiffs, the defendants' alleged scheme has been in existence for well over one year and has extended over a substantial period of time").

108 F.3d 1123, 1127 (9th Cir.1997) ("[I]f the section 1962(c) claim does not state an action upon which relief could ever be granted, regardless of the evidence, then the section 1962(d) [conspiracy] claim cannot be entertained")

**F.    Remainder of the Action**

Because the court denies defendants' motion to dismiss plaintiff's first amended RICO claims under Rule 12(b)(6), it retains subject matter jurisdiction over CBC's state law claims for fraud, conversion, breach of fiduciary duty, imposition of a constructive trust, and an accounting.  Defendants' motion to dismiss is thus denied in its entirety.

### III.  CONCLUSION

For the reasons stated, the court denies defendants' motion to dismiss.  Defendants must answer the first amended complaint within twenty days.

DATED: September 22, 2008

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE